# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Blue Cross and Blue Shield of Minnesota, as Administrator of the Blue Cross and Blue Shield of Minnesota Pension Equity Plan; CentraCare Health System, on Behalf of Itself and the Sisters of the Order of Saint Benedict Retirement Plan; Supplemental Benefit Committee of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust, as Administrator of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust; Jerome Foundation; Meijer, Inc., as Administrator of the Meijer OMP Pension Plan and Meijer Hourly Pension Plan, Participants in the Meijer Master Pension Trust; Nebraska Methodist Health System, Inc., on Behalf of Itself, and as Administrator of the Nebraska Methodist Hospital Foundation, the Nebraska Methodist Health System Retirement Account Plan, and the Jennie Edmundson Memorial Hospital Employee Retirement Plan; North Memorial Health Care; The Order of Saint Benedict, as the St. John's University Endowment and the St. John's Abbey Endowment; The Twin Cities Hospitals-Minnesota Nurses Association Pension Plan Pension Committee, as Administrator of the Twin Cities Hospitals-Minnesota Nurses Association Pension Plan, | Civil No. 11-2529 (DWF/JJG)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| Wells Fargo Bank, N.A., | |
| Defendant. | |

_____

Michael V. Ciresi, Esq., Munir R. Meghjee, Esq., Stephen F. Simon, Esq., Vincent J. Moccio, Esq., and Brock J. Specht, Esq., Robins Kaplan Miller & Ciresi LLP, counsel for Plaintiffs.

Lawrence T. Hofmann, Esq., Michael R. Cashman, Esq., Daniel J. Millea, Esq., James S. Reece, Esq., Lindsey A. Davis, Esq., Richard M Hagstrom, Esq., and Rory D. Zamansky, Esq., Zelle Hofmann Voelbel & Mason LLP; Brooks F. Poley, Esq. and William A. McNab, Esq., Winthrop & Weinstine, PA, counsel for Defendant.
_____

## INTRODUCTION

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Amended Motion to Dismiss (Doc. No. 41). For the reasons set forth below, the Court denies the motion to dismiss in its entirety.

## BACKGROUND

Plaintiffs are a group of institutional investors who participated in Wells Fargo's Securities Lending Program ("SLP") and suffered substantial losses during the course of their participation in the SLP. (Doc. No. 38, Am. Compl. ¶ 2.) As part of the SLP, Wells Fargo held each participant's securities in custodial accounts and made temporary loans of those securities to brokers. (*Id.* ¶ 4.) The brokers then posted collateral, generally cash, which Wells Fargo would invest until such time as the securities were returned. (*Id.* ¶ 5.) The goal of the SLP was that Wells Fargo's investment of the collateral received in exchange for the participants' securities would return a profit, and the earnings would be split with the participants receiving 60-70% and Wells Fargo receiving 30-40%. (*Id.* ¶ 61.) Plaintiffs allege that Wells Fargo failed to properly monitor and manage the

2

investments, failed to disclose material information about the status of the program and the investments, fraudulently concealed such information, and failed to put the interests of the participants ahead of the interests of the bank. (*Id.* ¶ 3.)

Specifically, Plaintiffs allege that Wells Fargo entered into Securities Lending Agreements ("SLAs") and other contractual agreements with each of the participants whereby Wells Fargo agreed to act as the participant's agent and agreed to follow certain restrictions with respect to its investment of the cash collateral. (*Id.* ¶ 57.) In particular, the SLAs stated that "[t]he prime considerations for the investment portfolio shall be safety of principal and liquidity requirements." (*Id.* ¶¶ 57-58.) The same language concerning safety of principal and liquidity requirements exists in the Confidential Memoranda and Investment Guidelines that were distributed to Plaintiffs. (*Id.* ¶¶ 90-93.) Plaintiffs also assert that Wells Fargo represented that its due diligence and monitoring of collateral investments would be ongoing, and would continue as long as each investment was held in a fund. (*Id.* ¶ 98.)

Plaintiffs allege that Wells Fargo "failed to undertake proper due diligence before investing (and maintaining) the cash collateral." (*Id.* ¶ 102.) Plaintiffs further claim that, "Wells Fargo continued its flawed investment strategy even after it knew, or reasonably should have known, that such investments were unsafe and illiquid," and that Wells Fargo "concealed its wrongful conduct." (*Id.*) Plaintiffs also assert that Wells Fargo invested the cash collateral in investments it knew were unsafe and illiquid, which violated the terms and provisions found in the SLAs and related documents, such as the

Declaration of Trust, the Subscription Agreements, the Confidential Memoranda, and Investment Guidelines, as well as Wells Fargo's fiduciary duties. (*Id.* ¶¶ 90-105.)[1]

Plaintiffs assert the following claims against Wells Fargo: (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Intentional and Reckless Fraud and Fraudulent Nondisclosure/Concealment; (4) Negligent Misrepresentation; (5) Violation of Minnesota Prevention of Consumer Fraud Act—Minn. Stat. §§ 325F.69 and 8.31; (6) Unlawful Trade Practices—Minn. Stat. §§ 325D.13 and 8.31; and (7) Deceptive Trade Practices—Minn. Stat. §§ 325D.44 and 8.31. (*Id.* ¶¶ 256-321.) Wells Fargo now moves to dismiss Counts III-VII of the Amended Complaint (Plaintiffs' fraud-based claims).[2]

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th

---

[1] Plaintiffs identify specific requirements set forth in the Investment Guidelines and Confidential Memoranda. (*See, e.g.,* Am. Compl. ¶¶ 99-100 ("For example, the Investment Guidelines stated that a designated person 'shall review the . . . [Fund] against guidelines daily to ensure compliance, and shall report this compliance to the management on a monthly basis.' And, if a security's rating or quality was downgraded, the Confidential Memoranda provide that Wells Fargo 'shall reassess promptly whether such security presents minimal credit risks' and 'shall . . . take such action as the Investment Manager determines is in the best interests of the [Fund] and its shareholders.'"))

[2] Counts III-VII were only brought on behalf of the non-ERISA Plaintiffs. For purposes of this order, any reference to Plaintiffs' "claims" refers only to Counts III-VII.

Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Motion to Dismiss

### A.   Rule 9(b) Pleading Requirement

Wells Fargo argues that Plaintiffs have failed to plead each of their fraud-based claims (Counts III-VII) with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b) states, "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Counts III-VII are subject to Rule 9(b)'s heightened pleading requirements. The purpose of Rule 9(b) is to provide defendants with sufficient notice of the allegations so that they may be able to formulate a response. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). The Rule must be read in harmony with the principles of notice pleading. *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Under Minnesota law, allegations of fraudulent or negligent misrepresentation must be pled with particularity. *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010). The circumstances constituting the fraud or mistake refers to the who, what, when, where, and how of the alleged fraud. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997). The level of particularity required, however, will depend upon the nature of the case and the relationship between the parties. *BJC Health System*, 478 F.3d at 917. Where a plaintiff alleges a systematic practice of fraudulent activities or representations over an extended period of time, the plaintiff need not allege the specific details of every fraudulent act, but must still plead some representative examples of the allegedly fraudulent conduct with sufficient particularity. *See Allstate Ins. Co. v. Linea Latina De Accidentes, Inc.*, 781 F. Supp. 2d 837, 846 (D. Minn. 2011) (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)). Here, the Court concludes that Plaintiffs have alleged their fraud-based claims with sufficient particularity to satisfy Rule 9(b).

Wells Fargo contends that Plaintiffs have failed to allege the who, what, when, where, and how of the alleged fraud in this case. (Doc. No. 46, at 7-10.) Wells Fargo further argues that Plaintiffs have failed to sufficiently plead reliance and causation. (Doc. No. 46, at 10-12.) The Court finds that Plaintiffs have sufficiently alleged the who, what, when, where, and how of the alleged fraud and have adequately pled reliance and causation. Plaintiffs have detailed numerous alleged misrepresentations, the vast majority of which are contained in Wells Fargo's own corporate documents. (Am. Compl. ¶¶ 46, 51, 165-69, 284.) The allegedly fraudulent representations are set out in sufficient detail in the Amended Complaint such that Wells Fargo has notice of the allegations to which it must respond. At this stage, Plaintiffs have put Wells Fargo on notice of which documents contained the allegedly fraudulent statements, and Plaintiffs have identified the specific statements within those documents that they consider to be fraudulent. *See Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 945 (D. Minn. 2009) (noting that the complaint need not identify precisely which employee used which words to sell a particular product); *see also In re Ancor Commc'n Inc.*, 22 F. Supp. 2d 999, 1004 (D. Minn. 1998) (denying motion to dismiss where alleged fraud was in corporate defendant's own press releases and SEC filings). This is sufficient to identify the who and what of the alleged misrepresentations under Rule 9(b).

Plaintiffs have also alleged the when and where of the alleged misrepresentations. Plaintiffs identify the corporate documents containing the misrepresentations at issue and give approximate dates on which each of the documents were issued. (Am. Compl. ¶¶ 46, 165-69 (stating the misrepresentations were present in the standardized marketing

materials year after year and detailing the months in which the newsletters were released).)  Further, Plaintiffs allege that these documents were distributed to all of the investors in the SLP.  (*Id.* ¶¶ 43, 165, 264.)  Plaintiffs have also alleged specifically what allegedly fraudulent communications each individual plaintiff had with Wells Fargo and the approximate time and date on which such communications took place.  (*Id.* ¶¶ 177-255.)  Plaintiffs need not allege the exact date on which each representation was made.  *See Solvay Pharms., Inc. v. Global Pharms.*, 298 F. Supp. 2d 880, 885-86 (D. Minn. 2004) (finding that allegations that defendants had been improperly marketing their products on an ongoing basis for the past several years were sufficient under Rule 9(b)).  The Amended Complaint thus provides "adequate information about events and their chronology to allow [Wells Fargo] to ascertain what is alleged and to adequately craft a response."  *McGregor v. Uponor, Inc.*, Civil No. 09-1136, 2010 WL 55985, at *15 (D. Minn. Jan. 4, 2010).

  Plaintiffs have also sufficiently pled the how of the fraud claims.  Plaintiffs not only identify the documents containing the misrepresentations and the precise alleged misrepresentations contained therein, but they also allege that "Wells Fargo knew that these representations were false or made these representations as of its own knowledge without knowing whether they were true or false."  (Am. Compl. ¶ 285.)  The Amended Complaint alleges that Wells Fargo represented to Plaintiffs that the funds in which Plaintiffs were participating conformed with the investment standards and mandates regarding safety of principal and liquidity requirements and that, at the time Wells Fargo made those representations, Wells Fargo knew the funds in which Plaintiffs were

8

participating did not conform to those investment standards and mandates and were instead invested in risky and illiquid securities.  (*Id.* ¶¶ 101-03, 104-42.)  Plaintiffs allege that Wells Fargo continued to misrepresent the status of the investments in the SLP and failed to disclose problems with the SLP, even when it knew the portfolio was exposed to substantial investment and liquidity risk, contrary to the investment guidelines.  (*See id.* ¶¶ 164-69.)  Additionally, Plaintiffs have alleged that Wells Fargo fraudulently concealed vital information concerning the portfolio's overexposure to risky and illiquid investments.  (*Id.* ¶¶ 163-69, 175-76, 292-94.)  Plaintiffs' Amended Complaint contains detailed factual allegations concerning Wells Fargo's allegedly fraudulent conduct and makes more than merely conclusory allegations in support of their claims.  For these reasons, the Court concludes that Plaintiffs have sufficiently alleged the who, what, when, where, and how of the alleged fraud.  Accordingly, the claims withstand Wells Fargo's motion to dismiss on that ground.

Plaintiffs' allegations of reliance and causation are also sufficient.  The Amended Complaint recites a series of specific misrepresentations made by Wells Fargo and alleges that Plaintiffs reasonably relied upon those representations.  (*Id.* ¶¶ 284-87.)  Wells Fargo argues that Plaintiffs "must state the specific individual for each Plaintiff who received and relied on the alleged false representations."  (Doc. No. 46, at 11.)  However, Rule 9(b) does not require such surgical precision.  *McGregor*, 2010 WL 55985, at *4 (citing *Carlson v. A.L.S. Enters., Inc.*, Civ. No. 07-3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008)).  Plaintiffs here have alleged a series of ongoing misrepresentations and a fraudulent course of conduct.  They have identified Wells Fargo

9

marketing materials and newsletters containing the alleged misrepresentations and have alleged that these materials were distributed to all members of the SLP. They have further alleged the nature and form of their reliance in the Amended Complaint. (Am. Compl. ¶¶ 98, 101, 177, 263, 289.) Plaintiffs have alleged their reliance generally on a series of misrepresentations made by Wells Fargo. The Court concludes that Wells Fargo is sufficiently on notice of what statements were relied upon by Plaintiffs and how Plaintiffs have relied on those statements.[3]

Finally, Wells Fargo argues that Plaintiffs have not adequately pled causation because Plaintiffs have not alleged that any misrepresentations or omissions by Wells Fargo caused the defaults by Cheyne Finance, LLC, Stanfield Victoria, LLC, and Lehman Brothers Holdings, Inc., whose securities were held by the Business Trust. (Doc. No. 46, at 12.) Plaintiffs are not required to allege that Wells Fargo was responsible for the failure of these three financial institutions, however, in order to pursue their claims. Plaintiffs have alleged that Wells Fargo, on a continual basis, misrepresented the level of risk to which the collateral was exposed. (Am. Compl. ¶¶ 164-69.) Further, Plaintiffs have alleged that Wells Fargo fraudulently concealed material information concerning the high-risk and illiquid investments that were being made by Wells Fargo in its SLP. (*Id.* ¶¶ 163-69, 175-76, 292-94.) Plaintiffs have alleged

---

[3] Further, as to Plaintiffs' consumer fraud claims, Plaintiffs are not required to plead individual reliance on Wells Fargo's wrongful conduct, nor must Plaintiffs plead direct evidence of reliance by individual consumers. *See In re St. Jude Medical, Inc.*, 522 F.3d 836, 839 (8th Cir. 2008) (citing *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001)).

that Wells Fargo over-invested in high-risk, illiquid investments, fraudulently concealed the true risk of the portfolios, and affirmatively misrepresented their safety. (*Id.*) Plaintiffs argue that Wells Fargo constructed a highly vulnerable portfolio for the SLP and then concealed this fact from the investors to keep them in the program, which proximately caused Plaintiffs' damages. (*Id.* ¶¶ 168, 295, 301, 309, 314, 323); *see Grp. Health Plan*, 621 N.W.2d at 14 (addressing the requirement that there be a causal nexus between the plaintiffs' damages and the defendants' wrongful conduct). For the foregoing reasons, Plaintiffs have pled all of their fraud-based claims with sufficient particularity to satisfy Rule 9(b).

### B.    Statutory Fraud Claims

Wells Fargo further argues that Plaintiffs' statutory fraud claims (Counts V-VII) are substantively defective. The Court addresses the substantive elements of each of Plaintiffs' statutory fraud claims below.

#### 1.    MCFA Claim

Wells Fargo argues that Plaintiffs have failed state a claim under the Minnesota Prevention of Consumer Fraud Act ("MCFA")—Minn. Stat. §§ 325F.69 and 8.31. The MCFA prohibits:

> [t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby . . . .

Minn. Stat. § 325F.69, subd. 1. Wells Fargo makes three arguments with respect to Plaintiffs' MCFA claim: (1) that Plaintiffs' lawsuit does not vindicate a "public right";

(2) that Plaintiffs are sophisticated investors, not "consumers"; and (3) that there was no misrepresentation in connection with the sale of merchandise. (Doc. No. 46, at 15-23.) For the reasons that follow, the Court concludes that Plaintiffs have properly pled their MCFA claim.

The public benefit requirement is not onerous. *Kinetic Co.*, 672 F. Supp. 933, 946 (D. Minn. 2009). Here, Plaintiffs have sufficiently pled a public benefit to defeat a motion to dismiss. (*See* Am. Compl. ¶ 308 (citing prevention of financial fraud, exposing deceptive practices toward regulators, preventing deceptive and misleading website advertising to the public at large, and a significant deterrent effect on deceptive practices toward the public, as support for a public benefit).) Plaintiffs allege that more than 100 investors were harmed by Wells Fargo's deceptive and misleading marketing and informational materials and that these deceptive and misleading materials were also advertised on Wells Fargo's website to the general public. (*Id.*) Notably, the state courts have already found a public benefit in the parallel state court litigation of these matters. *Workers' Comp. Reins. Ass'n ("WRCA") v. Wells Fargo Bank, N.A.*, Court File No. 62-CV-08-10825, 2010 Minn. Dist. LEXIS 64, at *23 (Minn. Dist. Ct., Dec. 22, 2010) (finding that "Plaintiffs have provided a public benefit by bringing this information to the attention of the 'highest levels' at Wells Fargo, of regulatory authorities, and of the general public"), *aff'd by WCRA v. Wells Fargo Bank, N.A.*, A11-1260 at 22, 2012 WL 1253094 (Minn. Ct. App. Apr. 16, 2011) (concluding that "the district court did not err by holding that an action seeking to hold a major financial institution accountable for violating contractual and fiduciary duties falls within the definition of conferring a public

12

benefit"). Wells Fargo asserts that Plaintiffs' pursuit of private remedies defeats the finding of a public benefit. Even failure to seek injunctive relief, however, does not preclude a plaintiff from satisfying the public benefit requirement. *See WCRA*, A11-1260 at 21-22, 2012 WL 1253094; *ADT Security Servs., Inc. v. Swenson*, 687 F. Supp. 2d 884, 891-92 (D. Minn. 2009). And here, in addition to compensatory damages, the Amended Complaint seeks injunctive, equitable and declaratory relief. (*See* Am. Compl. ¶ 309, citing Minn. Stat §§ 8.31, subd 3(a), and 325F.68, *et seq*.) The Court finds Plaintiffs have sufficiently pled a public benefit under the MCFA.[4]

The Court similarly finds no merit to Wells Fargo's argument that Plaintiffs are not "consumers" and are therefore unable to bring a claim under Minnesota's Private Attorney General Statute ("Private AG Statute"). The plain language of the Private AG Statute states that "*any person* injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages." Minn. Stat. § 8.31, subd. 3(a) (emphasis added). Further, in *Group Health*, the Minnesota Supreme Court allowed three HMOs to recover under the MCFA and the Private AG Statute stating, "[n]either the private remedies statute nor the substantive statutes contain any language

---

[4] Wells Fargo also relies upon *Collins* in support of its argument that Plaintiffs' MCFA claim must fail because any misrepresentations made by Wells Fargo were not made to the public at large utilizing mass media. *See Collins v. Minn. Sch. of Bus.*, 655 N.W.2d 320, 330 (Minn. 2003). The Court declines to find a "mass media" prerequisite under the MCFA. *See WCRA*, A11-1260 at 21-22, 2012 WL 1253094 ("[E]ven though Wells Fargo marketed its services only to certain investors rather than to the public at large, and [WCRA] sought damages rather than injunctive relief, neither fact precludes a finding of public benefit in [WCRA's] challenge to practices that had a substantial financial impact far beyond damages to [WCRA].").

restricting those who may sue to purchasers or consumers." 621 N.W.2d at 8. Moreover, Plaintiffs' potential status as sophisticated investors does not preclude them from bringing claims under the MCFA and the Private AG Statute, especially when those claims provide benefits to the public at large as discussed above. *See WCRA*, A11-1260 at 19-20, 2012 WL 1253094 (concluding that "the jurors rejected Wells Fargo's argument that each [plaintiff] was a sophisticated investor precluded from relying or acting on the challenged conduct").

Finally, Wells Fargo argues that there was no fraud "in connection with" the "sale" of "merchandise."[5] (Doc. No. 46, at 21-23.) Wells Fargo correctly points out that there must be some nexus between the alleged fraud and the sale of merchandise under the MCFA. *Cooperman v. R.G. Barry Corp.*, 775 F. Supp. 1211, 1213 (D. Minn. 1991). Notably, however, Plaintiffs have alleged that the fraud occurred in connection with the ongoing sale of merchandise by explaining that "Wells Fargo lent and/or re-lent Plaintiffs' securities on a daily basis and, in conjunction therewith, bought and sold Plaintiffs' shares in The Business Trust." (Am. Compl. ¶ 303.) Plaintiffs also claim that Wells Fargo engaged in a series of deceptive practices including misrepresenting the risk

---

[5] The MCFA defines merchandise as "any objects, wares, goods, *commodities*, *intangibles*, real estate, loans, or *services*." Minn. Stat. § 325F.68, subd. 2 (emphasis added). The Court finds that Plaintiffs have alleged that a sale of merchandise occurred either in the form of the sale of services or the sale of investment contracts, which constitute commodities or intangibles. *See WCRA*, A11-1260 at 20 n.3, 2012 WL 1253094 (citing fees charged by Wells Fargo in finding "no merit in the argument that Wells Fargo did not sell services"); *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987) ("The Consumer Fraud Act applies to the sale of investment contracts, since the definition of 'merchandise' includes 'commodities' and 'intangibles.'") (citations omitted).

and liquidity of the collateral investments and fraudulently concealing information concerning the exposure of the collateral to high-risk and illiquid investments. Further, Plaintiffs allege that Wells Fargo aggressively marketed the SLP (as a safe and conservative program) and solicited new investors, and repeatedly charged fees, and that Plaintiffs continued to participate in the SLP based on Wells Fargo's representations that the cash collateral would be invested in short term and high grade money market investments. (*See id.* ¶¶ 7, 113, 41-45, 61, 165-69, 175, 177-78, 180-81, 303, 304, 328.) Wells Fargo received ongoing payments in connection with the services it provided to Plaintiffs. (*Id.* ¶ 61.) The Court finds that Plaintiffs have sufficiently alleged that ongoing sales occurred with respect to the SLP, including Wells Fargo's lending of Plaintiffs' securities and its investments of the cash collateral, as well as Wells Fargo's continued sale of the SLP (as investment contracts) to investors such as Plaintiffs. (*See id.* ¶¶ 303-04.) Although Plaintiffs had the right to withdraw from the SLP at any time, they claim to have continued to participate in the program based on Wells Fargo's repeated representations concerning the safety and liquidity of the investments. (*See, e.g., id.* ¶ 177.) For the foregoing reasons, Plaintiffs have stated a plausible claim under the MCFA.

        2.    **UTPA Claim**

Wells Fargo argues that Plaintiffs have failed to plead a claim under the Unlawful Trade Practices Act ("UTPA")—Minn. Stat. §§ 325D.13 and 8.31. (Doc. No. 46, at 23.) The UTPA provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of

such merchandise." Minn. Stat. § 325D.13. Wells Fargo argues that Plaintiffs fail to allege a public benefit, Plaintiffs as sophisticated investors are not consumers under the UTPA, and Plaintiffs have not alleged any misrepresentations concerning the "true quality, ingredients, or origin" of the merchandise in connection with a sale. Having already rejected the public benefit and non-consumer arguments in its consideration of Plaintiff's MCFA claims, the Court similarly rejects these arguments as applied to Plaintiffs' UTPA claim. Further, the Court finds that Plaintiffs have sufficiently alleged that Wells Fargo misrepresented the true quality of the SLP, that such representations were ongoing, and that it is plausible that such misrepresentations occurred in connection with the sale of the merchandise. (*See* Am. Compl. ¶¶ 310-14.)

### 3. DTPA Claim

Finally, Wells Fargo argues that Plaintiffs have failed to state a claim on which relief can be granted under the Deceptive Trade Practices Act ("DPTA")—Minn. Stat. §§ 325D.44 and 8.31. The DTPA provides, in relevant part, that:

> [a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of any goods or services . . . or . . . engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. § 325D.44, subd. 1(2) and subd. 1(13). Wells Fargo argues that Plaintiffs have not alleged any ongoing wrongful conduct and that Plaintiffs' DTPA claim must fail because Plaintiffs have not alleged that they are likely to be damaged by *future* deceptive trade practices. (Doc. No. 46, at 24.) The Court finds, at this early stage of the

16

proceedings, that Plaintiffs have alleged a continuing wrong under the DTPA. (Am. Compl. ¶¶ 30, 197, 210, 223, 228, 234, 255, 308, 323, 328.) Because Plaintiffs have alleged that Wells Fargo is still engaged in securities lending for some Plaintiffs that have not exited the SLP, and Plaintiffs are seeking an injunction for return of those securities as part of their DTPA claim, the Court finds that Plaintiffs have pled a DTPA claim that survives Wells Fargo's motion to dismiss.[6] *Contra PCS Prof. Claim Serv., LLC v. Brambilla's Inc.*, Civil No. 06-4540, 2007 WL 3313661, at *8 (D. Minn. Nov. 6, 2007) (noting that the DTPA "allows redress for anticipated damages that are likely to occur in the future").

## CONCLUSION

For the reasons set forth herein, the Court concludes that Plaintiffs have sufficiently pled their fraud-based claims to defeat Wells Fargo's motion to dismiss. Plaintiffs have satisfied Rule 9(b) with respect to Counts III-VII and have sufficiently pled the elements of their statutory fraud claims (Counts III-VII).[7] Therefore, the Court finds that Wells Fargo's motion to dismiss Counts III-VII is properly denied.

---

[6] Wells Fargo also argues that its Business Trust was disaggregated in September 2008 and sold to CitiCorp; therefore, Plaintiffs cannot be damaged by any future deceptive trade practices. (Doc. No. 46, at 25.) It appears, however, that three non-ERISA Plaintiffs still continue to participate in the SLP. (*Id.*) The Court notes that it need not resolve any issues of fact at this time and presumes Plaintiffs' allegations of ongoing, wrongful conduct to be true for purposes of the present motion.

[7] Wells Fargo further argues that certain Plaintiffs' statutory fraud claims (Counts V-VII as asserted by Jerome Foundation, Nebraska Methodist, North Memorial, St. John's, and El Paso) are time-barred under the applicable statute of limitations. *See*

(Footnote Continued on Next Page)

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendant Wells Fargo Bank, N.A.'s Amended Motion to Dismiss (Doc. No. [41]) is **DENIED**.


Dated: April 18, 2012　　　　　　　　　s/Donovan W. Frank
　　　　　　　　　　　　　　　　　　　　DONOVAN W. FRANK
　　　　　　　　　　　　　　　　　　　　United States District Judge

---

(Footnote Continued From Previous Page)
Minn. Stat. § 541.05, subd. 1 (requiring all actions based upon "a liability created by statute" to be "commenced within six years"). The Court finds this argument to be without merit at this stage of the proceedings. Wells Fargo claims that the "sales" at issue occurred at the time Plaintiffs signed their respective SLAs (dates ranging from September 1996 to August 2005), yet the Complaint was not served until September 1, 2011. While the Court makes no express finding with respect to the date on which this cause of action may have accrued, the Court notes that Plaintiffs have sufficiently alleged the occurrence of ongoing "sales" as well as a plausible basis for tolling of the limitation period based on the claimed, continuing underlying fraud at issue in this case. *See Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902, 908 (8th Cir. 1980); *Appletree Square I Ltd. P'ship v. Investmark, Inc.*, 494 N.W.2d 889, 892-93 (Minn. Ct. App. 1993); *see also WCRA*, A11-1260 at 20-21, 2012 WL 1253094 (determining that, "because the subscription agreements were signed less than six years before [the] action was brought, in addition to the continuing nature of the misrepresentations, the [MCFA] claim [was] taken out of the statute of limitations urged by Wells Fargo").