# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Blue Cross Blue Shield of Minnesota as Administrator
of the Blue Cross and Blue Shield of Minnesota
Pension Equity Plan; CentraCare Health System, on
Behalf of Itself and the Sisters of the Order of
Saint Benedict Retirement Plan; Supplemental Benefit
Committee of the International Truck and Engine
Corp. Retiree Supplemental Benefit Trust, as
Administrator of the International Truck and
Engine Corp. Retiree Supplemental Benefit Trust;
Jerome Foundation; Meijer, Inc., as Administrator
of the Meijer OMP Pension Plan and Meijer Hourly
Pension Plan, Participants in the Meijer Master
Pension Trust; Nebraska Methodist Health System,
Inc., on Behalf of Itself, and as Administrator of the
Nebraska Methodist Hospital Foundation, the
Nebraska Methodist Health System Retirement
Account Plan, and the Jennie Edmundson Memorial
Hospital Employee Retirement Plan; North Memorial
Health Care, on Behalf of Itself and as Administrator
of the North Memorial Health Care Pension Plan;
The Order of Saint Benedict, as the St. John's University
Endowment and the St. John's Abbey Endowment;
The Twin City Hospitals-Minnesota Nurses Association
Pension Plan Pension Committee, as Administrator of
the Twin City Hospitals-Minnesota Nurses Association
Pension Plan; Administrative Committee of the Joint
Hospitals Pension Board, as Administrator of the
Twin City Hospitals Pension Plan for Licensed
Practical Nurses; The Board of Trustees of the
Tuckpointers Local 52 Pension Trust Fund, as
administrator of the Tuckpointers Local 52 Pension
Trust Fund, and the Board of Trustees of the Chicago
Area Joint Welfare Committee for the Pointing,
Cleaning and Caulking Industry Local 52, as administrator
for the Chicago area Joint Welfare Committee for the
Pointing, Cleaning and Caulking Industry Local 52;
and The El Paso County Retirement Plan,

     Plaintiffs,

Civil No. 11-2529 (DWF/KMM)

**MEMORANDUM
OPINION AND ORDER**

v.

Wells Fargo Bank, N.A.,

        Defendant.

---

Katherine S. Barrett Wiik, Esq., Munir R. Meghjee, Esq., and Thomas L. Hamlin, Esq., Robins Kaplan LLP, counsel for Plaintiffs.

Bart H. Williams, Esq., and Manuel F. Cachan, Esq., Proskauer Rose; Bradley R. Schneider, Esq., Erin J. Cox, Esq., and Fred A. Rowley, Jr., Esq., Munger Tolles & Olson LLP; and Daniel J. Millea, Esq., Elizabeth V. Kniffen, Esq., Lawrence T. Hofmann, Esq., Lindsey A. Davis, Esq., and Rory D. Zamansky, Esq., Zelle LLP; counsel for Defendant.

---

**INTRODUCTION**

This case is on remand from the Eighth Circuit on a narrow issue: Did the

defendant waive the preclusive effect of a jury verdict on the plaintiffs' then-pending

equitable claims before the Court? After reviewing the entire record, including the

extensive procedural history of this case and the parties' submissions, and for the reasons

detailed below, the Court finds that Defendant Wells Fargo, N.A. waived the jury

verdict's preclusive effect.

**BACKGROUND**

Plaintiffs are a group of institutional investors who participated in Wells Fargo's

Securities Lending Program. (Doc. No. 474 at 2.) Plaintiffs brought claims under state

and federal law against Wells Fargo related to its operation of the program after it

suffered losses during the Great Recession. (Doc. No. 329 at 1-3 (sealed).) Relevant

here, some Plaintiffs brought claims under ERISA for breach of fiduciary duty (generally,

the "ERISA Plaintiffs"),[1] and other, non-ERISA Plaintiffs brought claims for

common-law breaches of fiduciary duty (generally, the "Non-ERISA Plaintiffs").[2]  (Doc.

No. 200 at 55-63.)  While the sources of law differed, everyone agreed (even the experts)

that the common-law duties and the ERISA duties were "virtually identical" and could be

heard "at the same time and on the same evidence."  (*See* Doc. No. 308 ("Pl.'s Bench

Trial Opp.") at 21.)

Prior to trial, Defendant moved to have both the ERISA and non-ERISA claims

heard as a bench trial.  (Doc. No. 297.)  In its opposition, Plaintiffs acknowledged that the

---

[1]     The parties agree that the ERISA Plaintiffs include administrators of the following
plans:  Blue Cross Blue Shield of Minnesota Pension Equity Plan ("Blue Cross"),
International Truck and Engine Corp. Retiree Supplemental Benefit Plan ("International
Truck"), Meijer OPM Pension Plan and Meijer Hourly Pension Plan (together, "Meijer
Pension Trust"), Jennie Edmundson Memorial Hospital Pension Plan ("Nebraska
Methodist"), Tuckpointers Local 52 Pension Trust Fund and Chicago Area Joint Welfare
Committee for the Pointing, Cleaning, and Caulking Industry Local 52 (together,
"Tuckpointers Local 52"), Twin City Hospitals-Minnesota Nurses Association Pension
Plan ("Nurses Pension Plan"), and Twin City Hospitals Licensed Practical Nurses
Pension Plan ("LPN Plan").  (Doc. No. 596 ¶¶ 2-8; Doc. No. 598 ¶¶ 2-7; *see also* Doc.
No. 200 at 55.)

[2]     The non-ERISA Plaintiffs, whose claims were submitted to the jury, include:
CentraCare, El Paso Retirement, Jerome Foundation, Nebraska Methodist,
North Memorial, and St. John's.  (Doc. No. 557, Special Verdict Form.)  According to
the Third Amended Complaint, Nebraska Methodist and North Memorial participated in
the securities lending program on behalf of, and as administrators of, both ERISA and
non-ERISA entities under their respective Securities Lending Agreements.  (Doc.
No. 200 at 55 n.1-2 & 59 n.3-4.)  North Memorial asserted non-ERISA claims on behalf
of itself and an ERISA claim on behalf of the North Memorial Health Care Pension Plan,
an ERISA plan.  (*Id.* ¶ 224.)  Because of the commingled nature of North Memorial's
participation in the Securities Lending Program, the parties agreed to submit North
Memorial's entire claim to the jury.  (Doc. No. 506 ("Pretrial Conference Tr.") at
532-33.)

ERISA claims did not carry a right to a jury, but they opposed the motion for the

non-ERISA claims.  (Pl.'s Bench Trial Opp. at 3 n.2.)  Plaintiffs then proposed the

following trial plan:

- The jury would try all non-ERISA claims for damages, hearing testimony from experts, Wells Fargo employees, and non-ERISA Plaintiffs.

- At the same time as the jury hears the non-ERISA claims, the Court would sit as the finder of fact for the ERISA fiduciary duty claims. For example, the testimony by experts and Wells Fargo employees will be relevant to the determination of liability by both the jury and the Court.

- Testimony that is specific to the ERISA Plaintiffs would not be heard by the jury. The only such evidence that Plaintiffs contemplate at this time is testimony of the ERISA Plaintiffs themselves, as well as stipulated evidence on damages. Plaintiffs estimate that this would entail the testimony of approximately five witnesses and could be accomplished, in a bench trial, in two days. The Court could hear the testimony of these Plaintiffs at the conclusion of the jury trial.

(Pl.'s Bench Trial Opp. at 20-21 (footnote omitted).)  At the argument, Defendant agreed

to the proposed trial plan in the event that it lost its motion for a bench trial.  (Doc.

No. 478 at 5.)  Defendant explicitly refused an advisory jury.  (*Id.* at 24-25.)  By order,

the Court denied Defendant's motion for a bench trial for the common-law fiduciary duty

claim, but granted the motion for the ERISA fiduciary duty claim.  (Doc. No. 475.)  The

Court then adopted the Plaintiffs' trial plan.  (*Id.*)

At the pretrial conference, the parties discussed a complicating factor of the

Court's ruling:  Two plaintiffs—Nebraska Methodist and North Memorial—had brought

both a common-law claim and an ERISA claim.  (*See* Doc. No. 640 ("Am. Findings") at

3 n.2.)  And with the exception of one fund from Nebraska Methodist, Defendant stated

that the ERISA and non-ERISA funds had been inextricably commingled.  The parties

therefore agreed to submit the ERISA claims to the jury except for the one Nebraska

Methodist fund that could be separated out.  (Doc. No. 506, Pretrial Conference Tr.

531-33.)

The trial proceeded generally according to the trial plan.  Evidence was presented

from June 17, 2013 until August 8, 2013.  (Am. Findings at 3.)  Toward the end of the

trial, on August 5, 2013, the Court raised the issue of the preclusive effect of the jury

verdict (albeit indirectly) to the parties.  Wells Fargo asked whether the Non-ERISA

Plaintiffs could obtain an injunction under the Deceptive Trade Practice Act ("DTPA")

(which does not provide for damages) absent the jury finding liability on any of the other

claims.  (Doc. No. 589 ("Trial Tr.") at 5717-18.)

> THE COURT:  Then that raises an issue in an entirely different case that
> actually—it's a case—by just saying what I am about to say, people could
> figure out what case it is because it is about to get tried a third time.  I am
> overly sensitive because I have been reversed one time on a jury verdict in
> 29 years, and it was a year and a half ago or whatever.  That is exactly—on
> a separate issue that didn't result—it was a very [un]usual state statute
> where I—the Eighth Circuit ruled, and it is the Vaidyanathan case is which
> one it is, the state statute, they ruled, is more like a criminal statute with
> specific intent.  And I treated it more like a fraud statute, so now it was
> back, and the jury hung up on the second trial.
>
> Well, what does that got to do with this?  Well, now, even though we've
> tried it twice—and it's good faith arguments; I will just assume that for
> both sides.  One side is saying, Judge, even though you threw out the
> Plaintiffs' promissory estoppel, the equity claim that was tried to you as
> part of the jury case, even after the jury came back with a $2 million verdict
> that was then reversed by the Eighth Circuit, even though you did that, we
> now claim—this would be the Plaintiffs' argument—we now claim that
> somehow that is inconsistent with the [jury verdict] —so you were bound

by something that the—in the contract case.  So, therefore, you have to try them together, even though we still agree it is all up to you, Judge.  And even though I don't agree with that, and I don't believe the Eighth Circuit does either—that's really why I raised—**the question is, well, is there something the jury is going to do that the two of you don't agree on the procedural effect?**  And maybe, obviously, if counsel agrees with what you just said, then it is a nonissue.  If they don't, I guess I will have to hear from you briefly.

[Defendant's counsel]:  Thank you, Your Honor.

[Plaintiffs' counsel]:  It is an injunctive count, and we think liability and relief is for the Court to decide.

THE COURT:  Irrespective of what the—I think the question [Defendant's counsel] raised, what if [the jury] come[s] back with no liability?

[Plaintiffs' counsel]:  The standard is it is a different cause of action; it is injunctive relief only.  It is a cause of action for the Court to determine.

THE COURT:  [Defendant]?

[Defendant's counsel]:  Certainly wouldn't disagree that the injunction lies with the Court.  I just don't understand where it fits in with this[.]

(*Id.* 5718-20 (emphasis added).)  Three days later, on August 8, 2013, the jury returned the special verdict.  As relevant here, the jury answered "no" to the question of whether Wells Fargo breached its fiduciary duty to the Non-ERISA Plaintiffs.  (Doc. No. 557 (sealed).).

The parties finished submitting evidence for the ERISA portion of the trial, and the Court ordered the parties to submit proposed Findings of Fact and Conclusions of Law for the ERISA claims.  (Doc. No. 564.)  In its submission, Wells Fargo argued that the jury's findings for the Non-ERISA Plaintiffs were preclusive as to the ERISA Plaintiffs.  (Doc. No. 598.)  Defendant's proposed findings never addressed the DTPA

claim (Doc. No. 598), while the Plaintiffs' proposed findings stated that Wells Fargo had

violated the DTPA.  (Doc. No. 596 at 105-08.)  Thereafter, the Court requested additional

briefing on whether the Court was bound by the jury verdict.  (Doc. No. 599.)  In its

submission, Plaintiffs stated that the jury's verdict may preclude the DTPA claim.  (Doc.

No. 605 at 11.)  After reviewing the parties' new submissions, the Court concluded that it

was bound by the jury verdict.  (Doc. No. 611.)  For the ERISA claim, the Court

concluded that it was bound by the jury's verdict for the common-law fiduciary duty

claims for the Non-ERISA Plaintiffs.  (*See* Am. Findings, Conclusions of Law, at ¶¶ 8-9.)

For the DTPA claim, the Court concluded that the jury's verdict that Defendant did not

violate the Minnesota Consumer Fraud Act or the Minnesota Unlawful Trade Practices

Act precluded Plaintiffs' claim for an injunction under the DTPA.  (*See id.* at ¶¶ 11-12.)

The ERISA Plaintiffs moved to amend the findings because the Court did not discuss

whether Defendant had waived collateral estoppel.  (*See* Doc. No. 619.)  In its Amended

Findings, the Court stated:

> Admittedly, the Court proceeded under the view and under the assumption
> that the parties had, in their trial plan, either stipulated away the preclusive
> effect of a jury verdict or, perhaps with the benefit of hindsight, did not
> contemplate the effect of the jury verdict one way or the other, nor did the
> Court inquire of counsel during the pretrial on this issue.  However, on the
> unique facts of this case, the Court need not decide whether and under what
> circumstances the issue of preclusion can be waived.

(Am. Findings at 8.)  The Court went on to note the particular harshness of the result by

stating that if the Court were not bound, then it would have found, "based on the evidence

presented at trial, that Defendant breached its fiduciary duties to the ERISA Plaintiffs."

(*Id.* at 8 n.7.)

The ERISA Plaintiffs appealed. The Eighth Circuit concluded that the Court erred in not considering waiver. The Court of Appeals rejected the notion that the parties had to explicitly agree to the waiver. *See Blue Cross Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, 816 F.3d 1044, 1049 (8th Cir. 2016). Instead, the court of appeals concluded that "[u]nder the circumstances of this case, the parties could have waived collateral estoppel." *Id.* The court of appeals then remanded the case to determine "whether the parties waived the application of collateral estoppel." *Id.* at 1050.

## DISCUSSION

Collateral estoppel, sometimes referred to as issue preclusion, prevents, in certain circumstances, the parties or their privities from relitigating issues actually decided. *See generally* 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Fed. Prac. & Proc. Juris. § 4416 (3d ed. 1998 & Supp. 2017). While often raised in a second lawsuit, as this case demonstrates, collateral estoppel can apply when legal and equitable claims are split between the jury and the judge, respectively. This concept, also called direct estoppel, provides that "[g]enerally, where one party brings legal and equitable claims, the jury's factual determination is binding on the court's equitable determination." *See Blue Cross Blue Shield*, 816 F.3d at 1049. *See generally* Wright & Miller § 4418. The jury verdict is preclusive on the court, and not the other way around, to protect the parties' Seventh Amendment right to a jury trial. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 (1962). Without such a structure, the court would usurp the jury's function as the fact finder. *See id.*

But the parties can waive collateral estoppel. *Blue Cross Blue Shield*, 816 F.3d at

1049. Waiver is the intentional relinquishment of a known right. *E.g.*, *Residential*

*Funding Co., LLC v. Terrace Mortg. Co.*, 725 F.3d 910, 918 (8th Cir. 2013) (applying

Minnesota law); *Best Buy Stores, L.P. v. Benderson-Wainberg Assocs., L.P.*, 668 F.3d

1019, 1030 (8th Cir. 2012) (same); *Physical Distrib. Servs., Inc. v. R.R. Donnelley &*

*Sons Co.*, 561 F.3d 792, 795 (8th Cir. 2009) (same).[3]  "[A] valid waiver requires both

(1) knowledge of the right and (2) an intent to waive the right." *Best Buy*, 668 F.3d at

1030. Waiver can be expressed or implied. *E.g.*, *Residential Funding*, 725 F.3d at 918;

*Best Buy*, 68 F.3d at 1030; *Physical Distrib.*, 561 F.3d at 795. A party's knowledge can

be actual or constructive. *Best Buy*, 68 F.3d at 1030. Here, the parties (both represented

by highly experienced counsel at trial) are presumed to have known the law of collateral

estoppel for jury verdicts. *Cf. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,

559 U.S. 573, 581 (2010) (noting the "common maxim, familiar to all minds, that

ignorance of the law will not excuse any person, either civilly or criminally"). Thus, the

only issue for the Court is whether Defendant intended to waive collateral estoppel.

Intent can be implied by conduct, but there must be "a clear intention to [waive the right],

or facts from which waiver is necessarily implied." *Residential Funding*, 725 F.3d at

918; *see also Physical Distrib.*, 561 F.3d at 795. The party claiming waiver has the

burden of proof. *E.g.*, *Residential Funding*, 725 F.3d at 918.

---

[3]      The parties dispute whether federal or state law controls, but they agree that the
law for waiver is the same regardless. (*See* Doc. No. 605 at 14 n.6.)

The parties cite to four cases that discuss the waiver of collateral estoppel for jury verdicts. The cases cited appear to stand for the proposition that the parties must explicitly agree to waive the preclusive effect of jury verdicts. For example, in *Floyd v. Kellogg Sales Co.*, the parties explicitly agreed not to be bound by the jury verdict. 841 F.2d 226, 229 n.3 (8th Cir. 1988). Conversely, in *Butler v. Pollard*, the Tenth Circuit concluded that a pretrial order did not waive collateral estoppel merely by providing that the judge would decide the equitable issues. 800 F.2d 223, 225 (10th Cir. 1986); *see also E.E.O.C. v. Clear Lake Dodge*, 60 F.3d 1146, 1149 (5th Cir. 1995) (finding waiver, in part, because the parties agreed to an advisory jury); *Goldstein v. Cogswell,* Civ. No. 85-9256, 1991 WL 60420, at *15 (S.D.N.Y. Apr. 11, 1991) (concluding that agreeing to bifurcate legal and equitable claims was not a waiver).

The Eighth Circuit, however, concluded that an explicit waiver agreement was not necessary. *Blue Cross Blue Shield*, 816 F.3d at 1049. Instead, the Eighth Circuit noted that even though parties did not have an agreement, the facts of the case could constitute waiver. *Id.* at 1049 & n.4. Thus, absent an agreement by the parties, the Court must examine whether Defendant's conduct implies that it waived collateral estoppel. When waiver is implied by conduct, there must be "a clear intention to [waive the right], or facts from which waiver is necessarily implied." *Residential Funding*, 725 F.3d at 918.

Here, given the totality of Defendant's conduct, the Court concludes that Defendant waived the preclusive effect of the jury verdict. First, Defendant moved for a bench trial for the fiduciary duty claims. (Doc. No. 297.) In its papers, Defendant emphasized that the fiduciary duty claims were not triable by a jury. (Doc. No. 299 at 6.)

While certainly not dispositive,[4] such a motion suggests that Defendant wanted the judge and not the jury to decide the issues of fact and law.

Second, Defendant agreed to Plaintiffs' proposed trial plan, which provided that the judge would be the "finder of fact" for the ERISA claims. (*See* Doc. No. 475 at 6.) Moreover, the trial plan noted that the Court would determine liability for some of the claims. (Pl.'s Bench Trial Opp. at 20-21 ("[T]he testimony by experts and Wells Fargo employees will be relevant to the determination of liability by both the jury and the Court.").) The court in *Butler* concluded that a party does not waive collateral estoppel merely by agreeing to a trial plan that splits equitable claims and legal claims between the judge and jury. *See Butler*, 800 F.2d at 225; *Goldstein*, 1991 WL 60420, at *15. But the court's decision in *Butler* seemingly turned on the fact that the pretrial order did not reserve the factual issues for the judge. *Butler*, 800 F.2d at 225 ("While the issuance of the injunction was properly reserved to the judge, as is routinely done in these cases, the pretrial order did not purport to reserve to the court the decision of facts necessarily determined by the jury."). Here, in contrast, the parties agreed that the Court would be the "finder of fact" and decide liability for the ERISA claims, which suggests that Defendant waived collateral estoppel.

Third, Defendant treated North Memorial and Nebraska Methodist—the two plaintiffs with both ERISA and Non-ERISA fiduciary duty claims—inconsistently with the notion that Defendant expected the jury verdict to be binding on the ERISA claims.

---

[4]     *See, e.g.*, *Goldstein*, 1991 WL 60420, at *15 (concluding that agreeing to bifurcate legal and equitable claims was not a waiver).

Before trial, Defendant agreed that North Memorial would submit its ERISA claim to the

jury because its ERISA funds were inextricably commingled with its non-ERISA funds.

For Nebraska Methodist, however, Defendant could separate out one of the ERISA funds

and did not allow Nebraska Methodist to submit ERISA claims associated with that fund

to the jury.  (Doc. No. 506, Pretrial Conference Tr. 531-33.)  But if Defendant had

expected that collateral estoppel would apply to the jury's findings on fiduciary duty,

then the issue appears to be immaterial.  That is, if the jury's conclusion would be

dispositive on whether Wells Fargo breached its fiduciary duty for both the ERISA and

Non-ERISA claims, then the need to extricate the two funds would have been

unnecessary.

        And fourth, Defendant did not raise the issue of collateral estoppel when the Court

raised the issue of the procedural effect of the jury verdict.  (Doc. No. 589, Trial Tr.

5718-20.)  If Defendant expected that the jury verdict would be binding, it had an

obligation to say something.  *See Arctic Cat, Inc. v. Injection Research Specialists, Inc.*,

Civ. No. 01-543, 2001 WL 1628634, at *3 (D. Minn. Sept. 12, 2001) (noting that waiver

can be implied from silence); *see also Minnesota Min. & Mfg. Co. v. Kirkevold*, 87

F.R.D. 324, 335 (D. Minn. 1980).  Because Defendant remained silent on the issue of

collateral estoppel, it seems likely that Defendant did not consider the jury verdict

binding on the ERISA claim, especially when that silence is scrutinized in the context of

the extensive procedural history of the case.  Thus, given the totality of Defendant's

conduct, the Court concludes that Defendant waived the preclusive effect of the jury

verdict.

**ORDER**

Based on all of the records, files, and proceedings in this case, the Court finds that

Defendant waived its right to apply the preclusive effect of the jury verdict to the ERISA

Plaintiffs' claims.

**IT IS HEREBY ORDERED** that:

1.      Within 14 days of this order, the parties will submit letter briefs not to

exceed five pages regarding the procedural status and next steps for the case.

2.      Within 21 days of this order, the parties will schedule a telephonic status

conference with the Court to discuss the procedural status and next steps for the case.

Dated:  March 14, 2017                          s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                United States District Judge