UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Blue Cross Blue Shield of Minnesota as Administrator of the Blue Cross and Blue Shield of Minnesota Pension Equity Plan; CentraCare Health System, on Behalf of Itself and the Sisters of the Order of Saint Benedict Retirement Plan; Supplemental Benefit Committee of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust, as Administrator of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust; Jerome Foundation; Meijer, Inc., as Administrator of the Meijer OMP Pension Plan and Meijer Hourly Pension Plan, Participants in the Meijer Master Pension Trust; Nebraska Methodist Health System, Inc., on Behalf of Itself, and as Administrator of the Nebraska Methodist Hospital Foundation, the Nebraska Methodist Health System Retirement Account Plan, and the Jennie Edmundson Memorial Hospital Employee Retirement Plan; North Memorial Health Care, on Behalf of Itself and as Administrator of the North Memorial Health Care Pension Plan; The Order of Saint Benedict, as the St. John's University Endowment and the St. John's Abbey Endowment; The Twin City Hospitals-Minnesota Nurses Association Pension Plan Pension Committee, as Administrator of the Twin City Hospitals-Minnesota Nurses Association Pension Plan; Administrative Committee of the Joint Hospitals Pension Board, as Administrator of the Twin City Hospitals Pension Plan for Licensed Practical Nurses; The Board of Trustees of the Tuckpointers Local 52 Pension Trust Fund, as administrator of the Tuckpointers Local 52 Pension Trust Fund, and the Board of Trustees of the Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52, as administrator for the Chicago area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52; and The El Paso County Retirement Plan,<br><br>Plaintiffs, | Civil No. 11-2529 (DWF/KMM)<br><br><br><br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

v.

Wells Fargo Bank, N.A.,

        Defendant.

Katherine S. Barrett Wiik, Esq., Munir R. Meghjee, Esq., and Thomas L. Hamlin, Esq., Robins Kaplan LLP, counsel for Plaintiffs.

Bart H. Williams, Esq., and Manuel F. Cachan, Esq., Proskauer Rose; Bradley R. Schneider, Esq., Erin J. Cox, Esq., and Fred A. Rowley, Jr., Esq., Munger Tolles & Olson LLP; and Daniel J. Millea, Esq., Elizabeth V. Kniffen, Esq., Lawrence T. Hofmann, Esq., Lindsey A. Davis, Esq., and Rory D. Zamansky, Esq., Zelle LLP; counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Reconsider. (Doc. No. 692.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

The Court assumes the reader's familiarity with the proceedings, which are detailed in the Court's March 14, 2017 order. (Doc. No. 677.) As a short background, Plaintiffs filed a number of claims against Wells Fargo for its handling of certain investments during the Great Recession. Relevant here, some Plaintiffs brought claims under ERISA for breach of fiduciary duty (generally, the "ERISA Plaintiffs"), and other Plaintiffs brought claims for common-law breaches of fiduciary duty (generally, the "Non-ERISA Plaintiffs"). While the sources of the law differed, everyone agreed the duties were the same.

The Non-ERISA claims were submitted to the jury while the ERISA claims were submitted to the Court as a bench trial. Before the conclusion of the bench trial, the jury returned a verdict (in special verdict form) finding that Wells Fargo had not breached its fiduciary duty to the Non-ERISA Plaintiffs. Wells Fargo then argued that the jury verdict was preclusive on the Court's liability determination for the ERISA Plaintiffs. The Court agreed, and the ERISA Plaintiffs appealed. The Eighth Circuit remanded the case instructing the Court to determine whether the parties waived the preclusive effect of the jury verdict.

On remand, the Court determined that "given the totality of Defendant's conduct, the Court concludes that Defendant waived the preclusive effect of the jury verdict." (Doc. No. 677 at 12.) In reaching its decision, the Court considered the entire record of the case, including its extensive procedural history and the parties' submissions. In particular, the Court noted that Wells Fargo had: (1) moved for a bench trial for the fiduciary duty claims; (2) agreed to a trial plan where the Court would find facts and determine liability for the ERISA claims;[1] (3) agreed to submit some ERISA claims to the jury but not others; and (4) failed to make clear when asked that it considered the jury verdict to be preclusive on the ERISA claims.

After the March 14, 2017 order, Wells Fargo filed a letter requesting permission to file a motion to reconsider. On April 13, 2017, the Court granted the request in part. The Court allowed Wells Fargo to file a motion to reconsider addressing: (1) Wells Fargo's

---

[1] Wells Fargo disputes that it consented to the trial plan, arguing instead that it merely consented to the structure. The Court, however, adopted the trial plan, to which Wells Fargo did not object. (Doc. No. 475 at 6.)

3

decision to submit some ERISA claims to the jury but not others; and (2) the parties' discussions on the procedural effect of the jury verdict.[2]

### A. The Parties' Decision to Split ERISA Claims

The parties faced certain issues after the Court ordered that the ERISA claims would be tried as a bench trial, but that the common-law fiduciary-duty claims would be submitted to the jury. One of those issues was how the parties would proceed with plaintiffs who had both ERISA and non-ERISA fiduciary-duty claims. In resolving the issue, the parties agreed to submit to the jury the ERISA claims associated with North Memorial because the ERISA and non-ERISA funds were inextricably commingled. For Nebraska Methodist Jennie Edmundson Hospital Fund, however, the parties could separate out the ERISA funds and therefore agreed to have those claims submitted as part of the bench trial. (Doc. No. 693 ("Def.'s Br.") at 8.) Wells Fargo considered the amounts relatively modest in the context of the larger damages sought. (Tr. at 532.) In its March 14, 2017 order, the Court found that the splitting of the claims appeared to be inconsistent "with the notion that [Wells Fargo] expected the jury verdict to be binding on the ERISA claims." *Blue Cross Blue Shield of Minn. v. Wells Fargo Bank, N.A.*, Civ. No. 11-2529, 2017 WL 1373866, at *5 (D. Minn. Mar. 14, 2017).

### B. Discussion Regarding the Procedural Effect of the Jury Verdict

Additionally, toward the end of the trial and in the context of Wells Fargo's Motion as a Matter of Law, Wells Fargo made statements that appeared inconsistent with

---

[2] By allowing Wells Fargo to file the motion to reconsider on these two issues, the Court in no way diminishes the other bases that it relied on in finding waiver.

the notion that Wells Fargo considered the jury verdict preclusive. During the argument on Wells Fargo's motion, the Court asked about the Non-ERISA Plaintiffs' claim for an injunction under the Minnesota Deceptive Trade Practices Act ("DTPA claim"):

> But with respect to not submitting the [DTPA claim] to the jury, what's the procedural -- I want to just make sure there's a meeting of the minds by counsel, well, here's -- we agree to that but we don't agree, or we do agree and here's how that will be decided with or without the jury's verdict.

(Tr. at 5698.) Plaintiffs responded that the DTPA claim would be decided by the Court as part of its findings of fact and conclusions of law. (*Id.* at 5698-99.) Although Wells Fargo was given an opportunity to immediately dispute this, Wells Fargo did not disagree with Plaintiffs' proposal for the DTPA claim. (*See id.*)

After the Court denied Wells Fargo's motion from the bench, Wells Fargo asked again about the DTPA. The Court then stated, "Yes, I didn't, I guess, ask for a response from -- you heard Plaintiffs' counsel say, well, that won't be going to the jury, that the Court will decide that with appropriate findings of fact and in its Order when the whole thing is over." (*Id.* at 5718.) In response, Wells Fargo questioned where the DTPA claim fit given its injunctive remedy would simply be the return of the investment. Wells Fargo posited that "absent liability on any of the other claims, [injunctive relief] is not going to be an available remedy. . .." (*Id.*) In its current briefing, Wells Fargo acknowledges that its position on the DTPA claim was that an injunction would be unavailable if the jury found no liability "precisely because collateral estoppel would prohibit such relief." (Def.'s Br. at 3.)

Wells Fargo's question prompted the Court to ask the parties whether they agree on the procedural effect of the jury verdict. In doing so, the Court recounted a recent case where a party argued that the jury verdict on common-law claims precluded the Court from deciding certain equitable claims:

> THE COURT: Then that raises an issue in an entirely different case that actually—it's a case—by just saying what I am about to say, people could figure out what case it is because it is about to get tried a third time. I am overly sensitive because I have been reversed one time on a jury verdict in 29 years, and it was a year and a half ago or whatever. That is exactly—on a separate issue that didn't result—it was a very [un]usual state statute where I—the Eighth Circuit ruled, and it is the Vaidyanathan case is which one it is, the state statute, they ruled, is more like a criminal statute with specific intent. And I treated it more like a fraud statute, so now it was back, and the jury hung up on the second trial.
>
> Well, what does that got to do with this? Well, now, even though we've tried it twice—and it's good faith arguments; I will just assume that for both sides. One side is saying, Judge, even though you threw out the Plaintiffs' promissory estoppel, the equity claim that was tried to you as part of the jury case, even after the jury came back with a $2 million verdict that was then reversed by the Eighth Circuit, even though you did that, we now claim—this would be the Plaintiffs' argument—we now claim that somehow that is inconsistent with the [jury verdict] —so you were bound by something that the—in the contract case. So, therefore, you have to try them together, even though we still agree it is all up to you, Judge. And even though I don't agree with that, and I don't believe the Eighth Circuit does either—that's really why I raised—**the question is, well, is there something the jury is going to do that the two of you don't agree on the procedural effect?** And maybe, obviously, if counsel agrees with what you just said, then it is a nonissue. If they don't, I guess I will have to hear from you briefly.
>
> [Defendant's counsel]: Thank you, Your Honor.
>
> [Plaintiffs' counsel]: It is an injunctive count, and we think liability and relief is for the Court to decide.
>
> THE COURT: Irrespective of what the—I think the question [Defendant's counsel] raised, what if [the jury] come[s] back with no liability?

6

> [Plaintiffs' counsel]: The standard is it is a different cause of action; it is injunctive relief only. It is a cause of action for the Court to determine.
>
> THE COURT: [Defendant]?
>
> [Defendant's counsel]: Certainly wouldn't disagree that the injunction lies with the Court. I just don't understand where it fits in with this[.]

(Tr. at 5718-20 (emphasis added).) In its March 14, 2017 order, the Court concluded, "If Defendant expected that the jury verdict would be binding, it had an obligation to say something." *Blue Cross Blue Shield of Minn.,* 2017 WL 1373866, at *6. By remaining silent, the Court determined, it seemed "likely that Defendant did not consider the jury verdict binding on the ERISA claim, especially when that silence is scrutinized in the context of the extensive procedural history of the case." *Id.*

## DISCUSSION

### I. Standard of Review

A motion to reconsider is the "functional equivalent" of a motion to alter or amend judgment brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See, e.g.*, *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, Civ. No. 13-2385, 2014 WL 991129, at *1 (D. Minn. Mar. 11, 2014); *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, Civ. No. 99-545, 2006 WL 354234, at *1 (D. Minn. Feb. 15, 2006). "Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment."

7

*United States v. Metro. St. Louis Sewer Dist.,* 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted); *see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998). Relief under Rule 59(e) is granted in only "extraordinary" circumstances. *See United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986).

## II. Waiver by Silence

Wells Fargo argues that the Court misapplied two federal cases in analyzing the parties' discussion of the procedural effect of the jury verdict. The Court relied on *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, Civ. No. 01-543, 2001 WL 1628634, at *3 (D. Minn. Sept. 12, 2001) and *Minnesota Mining & Manufacturing Co. v. Kirkevold*, 87 F.R.D. 324, 335 (D. Minn. 1980) for the principle that waiver could be implied by silence. Wells Fargo acknowledges that these cases stand for the proposition that silence can be indicative of waiver when such silence is inconsistent with a given right. (*See* Def.'s Br. at 6.) Wells Fargo argues that the Court committed manifest error by concluding that Wells Fargo's counsel had an obligation to tell the Court in the context of the discussion regarding the DTPA claim that Wells Fargo considered the jury verdict to bind the Court on the ERISA claims. The Court, however, did not draw Wells Fargo's obligation from *Artic Cat* or *Kirkevold*. Instead, Wells Fargo's counsel had an obligation to disclose their intent to seek collateral estoppel of the jury verdict pursuant to their ethical duty of candor to the Court. Thus, because Wells Fargo's counsel had an ethical obligation to speak up, a failure to do so seemed to indicate that Wells Fargo did not intend the jury verdict to be preclusive on the non-jury issues. Put another way,

Wells Fargo manifested an intent to waive the preclusive effect of the jury verdict by remaining silent during the discussion because such silence was inconsistent with the action of a party intending to apply collateral estoppel to the jury verdict.

Wells Fargo also argues that the Court erred by applying federal law instead of Minnesota law to the question of whether the jury verdict on common-law claims is preclusive on the federal ERISA claims. (Def. Br. at 5-6.) But even if Minnesota law applied, the Court's decision would not change. Wells Fargo cites two Minnesota Supreme Court cases for the proposition that waiver cannot be implied by mere inaction or silence. *State ex rel. Swanson v. 3M Co.*, 845 N.W.2d 808, 819 (Minn. 2014); *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn. 2011)

In *Frandsen*, an employee had been injured at his job with Ford. The parties settled. Under Minnesota law, there is a rebuttable presumption that an employee will retire by the age of 67. This presumption allows an employer to stop making disability payments once the employee reaches 67. 801 N.W.2d at 179. In *Frandsen*, when the employee turned 67, Ford stopped making payments. The employee then argued that Ford had waived the statutory presumption by omitting it from the settlement agreement. *Id.* The Minnesota Supreme Court reviewed the issue as a waiver of a statutory right. *Id.* at 182. The court determined that the Workers' Compensation Court of Appeals "erroneously concluded that waiver can be implied from mere inaction." *Id.* The supreme court explained that waiver required that the party knew about the right and intended to waive the right. *Id.* The court went on to say that even implied waiver requires an expression of intent. *Id.* Applying the standard in *Frandsen*, the court

determined that inaction was not enough to establish waiver because the employer could invoke the presumption by doing nothing. *Id.* at 182-83.

Similarly, in *State ex rel. Swanson v. 3M Co.*, the Minnesota Supreme Court addressed whether 3M had waived its right to seek to disqualify the state's attorneys based on a prior conflict. 845 N.W.2d at 812. In assessing whether 3M had waived its right to seek disqualification, the court reiterated that waiver requires knowledge of the right and intent to waive that right. *Id.* at 819. The court explained that both knowledge and intent could be implied. *See id.* And like in *Frandsen*, the court rejected that mere inaction could constitute waiver. *Id.* The court then focused the waiver inquiry on 3M's delay in seeking to disqualify the state's attorneys. *Id.* The district court had focused on when 3M's general counsel and outside counsel had learned of the conflict. The Minnesota Supreme Court, however, concluded that the district court should have also inquired into when 3M learned of the conflict. *Id.* at 819-20.

Here, to start with, Wells Fargo makes too much of the Supreme Court's general statement that waiver cannot be implied by mere inaction. Certainly in some situations, a court will find waiver from inaction. For example, under Minnesota law, a party still waives its right to certain defenses by failing to timely raise them, *see* Minn. R. Civ. P. 12.08; or by failing to object to evidence, *see* Minn. R. Evid. 103(a); or by failing to timely appeal, *see* Minn. R. App. P. 104.02. Indeed, in *State ex rel. Swanson v. 3M Co.*, the court acknowledged that a party can waive its rights to disqualify former attorneys when the party fails to timely assert its rights. 845 N.W.2d at 819.

But even if mere inaction cannot constitute waiver, the Court did not imply waiver from mere inaction. Instead, Wells Fargo raised the issue of the preclusive effect of the jury verdict on the DTPA claim. The Court then asked if both parties agreed with the procedural effect of the jury verdict, given the Court's prior experience with split claims. The Court even noted that, in the other case, the parties had argued about the preclusive effect of the jury verdict. (Tr. at 5719-20.) Plaintiffs took the position that the Court would decide the DTPA "irrespective" of the jury verdict. (*See id.* at 5720.) In response, after raising the issue of collateral estoppel and hearing Plaintiffs' position, Wells Fargo said, "Certainly wouldn't disagree that the injunction lies with the Court. I just don't understand where it fits in with this." (*Id.*) Thus, the discussion was more than "mere inaction." The parties discussed their view of the procedural effect of the jury verdict. Such discussion evidenced the parties' intent to waive the preclusive effect of the jury verdict.

Wells Fargo also notes that the Court moved forward the discussion on the jury verdict, "without waivers from anybody." (*See id.*) Wells Fargo argues that it would be inequitable to find waiver based on that discussion. In a technical sense, the Court abided by its promise because it found that the jury verdict precluded the DTPA claim. Separate from that, the Court acted consistent with Eighth Circuit's instructions to review the record to glean the parties' intent for the preclusive effect of the jury verdict. Having reviewed the record, the Court found that Wells Fargo's discussion of the DTPA claim seemed to indicate the parties' intent to waive the preclusive effect of the jury verdict.

11

Regardless, nothing raised in Defendant's motion to reconsider demonstrates that the Court committed manifest error by considering the discussion.

## III. Splitting ERISA claims

Wells Fargo also argues that the Court committed manifest error by considering the parties' decision to submit some of its ERISA claims to the jury but not others. In support of its motion to reconsider, Wells Fargo explained that it had three reasons for splitting the claims. First, the evidence of the ERISA claim would have been misplaced if it had been included in the non-ERISA claims. Second, the Non-ERISA Plaintiffs had sought punitive damages, which were not available for the ERISA claims. Wells Fargo argued that allowing the ERISA claims to go to the jury would increase Wells Fargo's exposure for punitive damages. Last, Wells Fargo had a strategic incentive to omit from the jury as much of the potential damages as possible out of fear that the jury would find liability based solely on the amount of damages sought.

In essence, Wells Fargo argues that juries are unpredictable and, as a result, should be given as few decisions as possible. Wells Fargo therefore moved for a bench trial for the fiduciary-duty claims, agreed to a trial plan that had the Court find facts and determine liability for the ERISA claims, and endeavored to screen from the jury any references to the ERISA Plaintiffs. Wells Fargo's action appears to indicate that Wells Fargo did not want the jury to decide the ERISA claims. At the very least, Wells Fargo has failed to show the Court committed manifest error by considering the parties' agreement to split the claims.

Likewise, the Court is unpersuaded by Wells Fargo's argument that it did not submit to the jury the ERISA claim for the Jennie Edmundson Hospital Fund because doing so would increase Wells Fargo's exposure for punitive damages. Wells Fargo states, "The higher dollar amount put before the jury in compensatory damages could have resulted in increased exposure to punitive damages." (Def.'s Br. at 9.) But those claims could have been separated out for the punitive-damages phase. In fact, Wells Fargo submitted proposed jury instructions that would have instructed the jury that it could not award punitive damages for the Non-ERISA Plaintiffs' claims for breach of contract, negligent misrepresentation, or for the Minnesota statutory claims. (Doc. No. 395 at 5.) Including another sentence for ERISA claims does not seem unworkable; especially considering Wells Fargo had identified the amount as modest. (Tr. 532.) Thus, Wells Fargo failed to show the Court committed manifest error by considering the parties' decision to submit some ERISA claims to the jury but not others.

**ORDER**

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Reconsider (Doc. No. [692]) is **DENIED**.

2. To the extent that the Amended Findings of Fact, Conclusions of Law, and Order for Judgment (Doc. No. [640]) was inconsistent with this Memorandum Opinion and Order and the March 14, 2017 Memorandum Opinion and Order (Doc. No. [677]) on the issue of wavier of collateral estoppel of the jury verdict as to the ERISA Plaintiffs'

claims, the Amended Findings of Fact, Conclusions of Law, and Order for Judgment is **VACATED**.

3. Within 30 days of this order, the parties will submit proposed findings of fact and conclusions of law regarding the ERISA Plaintiffs' claims. The proposed findings of fact and conclusions of law should include appropriate citations to the record.

4. The parties will also meet and confer on a briefing schedule on the appropriate measure of damages as outlined in Wells Fargo's March 28, 2017 letter (Doc. No. [683]). The Court reserves the right to hear argument on the issue.

Dated: June 8, 2017                    s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge