# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Blue Cross and Blue Shield of Minnesota, as Administrator of the Blue Cross and Blue Shield of Minnesota Pension Equity Plan; CentraCare Health System, on Behalf of Itself and the Sisters of the Order of Saint Benedict Retirement Plan; Supplemental Benefit Committee of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust, as Administrator of the International Truck and Engine Corp Retiree Supplemental Benefit Trust; Jerome Foundation; Meijer, Inc., as Administrator of the Meijer OMP Pension Plan and Meijer Hourly Pension Plan, Participants in the Meijer Master Pension Trust; Nebraska Methodist Health System, Inc., on Behalf of Itself, and as Administrator of the Nebraska Methodist Hospital Foundation, the Nebraska Methodist Health System Retirement Account Plan, and the Jennie Edmundson Memorial Hospital Employee Retirement Plan; North Memorial Health Care, on Behalf of Itself and as Administrator of the North Memorial Health Care Pension Plan; The Order of Saint Benedict, as the St. John's University Endowment and the St. John's Abbey Endowment; The Twin City Hospitals-Minnesota Nurses Association Pension Plan Committee, as Administrator of the Twin City Hospitals-Minnesota Nurses Association Pension Plan; Administrative Committee of the Joint Hospitals Pension Board, as Administrator of the Twin City Hospitals Pension Plan for Licensed Practical Nurses; The Board of Trustees of the Tuckpointers Local 52 Pension Trust Fund, as administrator of the Tuckpointers Local 52 Pension Trust Fund, and the Board of Trustees of the Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52, as administrator for the Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52; The El Paso County Retirement Plan,<br><br>      Plaintiffs,<br>v.<br>Wells Fargo Bank, N.A.,<br>      Defendant. | Case No: 11-cv-2529 DWF/KMM<br><br><br><br>**WELLS FARGO BANK, N.A.'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING REMEDIES** |

## INTRODUCTION

For the reasons set forth in Wells Fargo Bank, N.A.'s July 21, 2017 Proposed Findings of Fact and Conclusions of Law, the ERISA Plaintiffs are bound by the non-ERISA jury's determination that Wells Fargo did not breach its fiduciary duty to the Non-ERISA Plaintiffs. Dkt. 701 at 61-74.[1] Even if Wells Fargo waived its right to apply the preclusive effect of the non-ERISA jury verdict to the ERISA Plaintiffs' claims, which Wells Fargo maintains it did not do, Wells Fargo respectfully submits that this Court can and should apply the doctrine of collateral estoppel *sua sponte* to find that the ERISA Plaintiffs are bound by the non-ERISA jury's determination that Wells Fargo did not breach its fiduciary duties. *Id.* Finally, even if the Court declines to give preclusive effect to the jury's verdict, the ERISA Plaintiffs did not meet their burden of proving a breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"). *Id.* at 74-99. Accordingly, the ERISA Plaintiffs are not entitled to any remedy at law or in equity.

Pursuant to the Court's June 8, 2017 Order, Wells Fargo files these Proposed Findings of Fact and Conclusions of Law regarding remedies. Dkt. 704.[2] While Wells

---

[1] On June 8, 2017, the Court ordered the parties to submit Proposed Findings of Facts and Conclusions of Law, and to "meet and confer on a briefing schedule on the appropriate measure of damages." Dkt. 696 at 14. The parties met and conferred and proposed a briefing procedure and schedule, Dkt. 697, 703 and 705, which was approved by the Court. Dkt. 698, 704 and 706.  Pursuant to this schedule, the parties previously submitted Proposed Findings of Fact and Conclusions of Law regarding whether Wells Fargo breached its fiduciary duties under ERISA. Dkt. 699 and 701.

[2] Contemporaneous with this filing, Wells Fargo will file a brief on the "recoverability and appropriate measure of damages." Dkt. 704.

2

Fargo maintains that Plaintiffs are not entitled to any remedy, Plaintiffs' post-trial receipt of millions of dollars in principal and interest payments from their collateral assets and proceeds from the sale of such assets significantly impacts and reduces the parties' respective calculations of Plaintiffs' investment losses.  Indeed, by Plaintiffs' own calculation, which improperly fails to account for the current value of Plaintiffs' collateral assets, their claim for investment losses has shrunk by more than half since trial.

Specifically, at the time of trial, five of the Plaintiffs[3] remained in the Wells Fargo Securities Lending Program ("the program").  Each of those Plaintiffs has since exited the program, sold all of the collateral assets, and paid their collateral shortfalls.  The parties recently stipulated to each of these facts, the amount of each Plaintiff's sales proceeds, and the amount of each Plaintiff's collateral shortfall.  *See* Dkt. 707 ¶¶ 1-8 ("Stipulation").  At the time of trial, Plaintiffs Twin City Hospitals Licensed Practical Nurses Pension Plan and International Truck and Engine Supplemental Benefit Plan had exited the program but maintained possession of certain of their collateral assets and received principal and interest payments from those collateral assets.  Since trial, Twin City Hospitals Licensed Practical Nurses continued to receive principal and interest payments from its collateral assets until it elected to sell such assets and collect the sales proceeds.  The parties have stipulated to each of these facts and the amount of principal and interest payments and sales proceeds Twin City Hospitals Licensed Practical Nurses received.  *Id.* ¶¶ 9-10.

---

[3] Jennie Edmundson Memorial Hospital Pension Plan, Meijer Pension Trust, Tuckpointers Local 52 Health and Welfare Fund, Tuckpointers Local 52 Pension Fund, and Twin City Hospitals-Minnesota Nurses Association Pension Plan.

International Truck continues to maintain possession of its collateral assets and has continued to receive principal and interest payments from its collateral assets. The parties have stipulated to each of these facts and the amount of principal and interest payments International Truck has received. *Id.* ¶¶ 11-14.

In total, Plaintiffs have received more than $9 million in principal and interest payments from their collateral assets and proceeds from the sale of such assets since the time of trial. While Wells Fargo maintains that Plaintiffs are not entitled to any remedy, if the Court determines otherwise, Plaintiffs' post-trial receipt of principal and interest payments and sales proceeds is critical for two reasons.

*First*, the parties agree that Plaintiffs' investments losses should be limited to the amount Plaintiffs paid at exit to cover their shortfall in their cash collateral account *less* (1) principal and interest payments Plaintiffs received from their collateral assets, and (2) proceeds from any sale of those collateral assets. Therefore, the parties agree that any calculation of Plaintiffs' investment losses must be reduced by the amount of Plaintiffs' post-trial receipt of principal and interest payments and sales proceeds.

*Second*, in the case of International Truck, the only Plaintiff continuing to maintain possession of their collateral assets, Wells Fargo contends that their investment loss must be further reduced by the value of the collateral assets they continue to hold. Far from being worthless, Plaintiffs' post-trial receipt of more than $9 million in principal and interest payments and sales proceeds confirms that International Truck's collateral assets have value and that such value should be reflected in any calculation of International

Truck's investment losses. *See* Wells Fargo's Brief on the Recoverability and Appropriate Measure of Damages (filed October 18, 2017).

## I.     FINDINGS OF FACT

### A.     Parties

#### 1.     Wells Fargo

1. Wells Fargo Bank, N.A. ("Wells Fargo"), is a national banking association with its main office in Sioux Falls, South Dakota. Third Am. Compl. ¶ 25; Answer to Third Am. Compl. ¶ 25. Wells Fargo is an indirect subsidiary of Wells Fargo & Company. *Id*.

#### 2.     Plaintiffs

2. Blue Cross Blue Shield of Minnesota Pension Equity Plan ("**Blue Cross**") is an ERISA plan for the employees of Blue Cross Blue Shield of Minnesota. Blue Cross joined the securities lending program on September 29, 2000 and subsequently subscribed to both the Enhanced Yield Fund ("EY Fund") and the Collateral Investment for Term Loans Trust ("CI Term Trust") of the Wells Fargo Trust for Securities Lending (the "Business Trust"). TX33137; TX32790.

3. International Truck and Engine Supplemental Benefit Plan ("**International Truck**") is an ERISA plan for the employees of International Truck (n/k/a Navistar Corporation). Tr. 6631:20-6632:2 (Viola); *id*. at 6643:24-25. International Truck joined the securities lending program in January of 2003, subscribing to the EY Fund, and later the CI Term Trust. TX33293; TX32809.

4. Jennie Edmundson Memorial Hospital Pension Plan ("**Nebraska Methodist**") is an ERISA plan for the employees of the Jennie Edmundson Memorial Hospital, which is owned by the Nebraska Methodist Health System. Jansky Trial Dep. 4:16-21. In August 1999, Nebraska Methodist joined the securities lending program, later subscribing to both the EY Fund and CI Term Trust. TX36671; TX32817; TX32818.

5. Meijer Pension Trust ("**Meijer**") is an ERISA plan for the employees of Meijer, Inc. and related entities. Tr. 6246:9-15 (Julien). Meijer joined the securities lending program in July of 2006, subscribing to both the EY Fund and the CI Term Trust. TX33053.

6. Tuckpointers Local 52 Health and Welfare Fund is an ERISA plan that provides health care benefits for its plan members and their dependents. The Tuckpointers Local 52 Pension Fund is an ERISA plan that provides retirement benefits to plan members and their beneficiaries. Tr. 6463:1-8 (Rivkin). These plans are referred to collectively as "**Tuckpointers**." Tuckpointers joined the securities lending program in March of 2007, subscribing to the EY Fund and CI Term Trust. TX32915; TX32916; TX32917; TX32919; TX32920; TX36672.

7. Twin City Hospitals-Minnesota Nurses Association Pension Plan ("**TC-MNA**") is an ERISA plan for the Minnesota Nursing Association Union. Twin City Hospitals Licensed Practical Nurses Pension Plan ("**TC-LPN**") is an ERISA plan for the licensed practical nurses. Tr. 6522:25-623:6 (Slocum); *id*. at 6523:23-6524:5. TC-MNA

6

and TC-LPN joined the securities lending program in 2004, subscribing to the EY Fund and later the CI Term Trust. TX33222; TX33223; TX33225; TX33226. [4]

### B. Investment Losses for those Plaintiffs that Sold All of their Collateral Assets at Exit (Blue Cross, Nebraska Methodist, Meijer, Tuckpointers, and TC-MNA)

8.  For those Plaintiffs that exited the program and simultaneously liquidated all of their collateral assets, their investment loss is the amount paid at exit to cover the shortfall in their cash collateral account, or, in the case of Blue Cross, the amount it paid at exit to cover the loss in value of its shares in the Business Trust. *See* Tr. 5609:25-5610:23 (McConnell).

9.  Blue Cross' investment loss is $444,995, the amount it paid at exit to cover the loss in value of its shares in the Business Trust. TX39038 (demonstrative);[5] Tr. 6210:13-6211:6 (Orner); *id*. at 6232:3-11.

10. At the time of trial, Nebraska Methodist remained in the program and maintained possession of certain collateral assets. Jansky Trial Dep. 34:5-7; *id*. at 35:5-10. On or about January 9, 2015, Nebraska Methodist sold all of its remaining collateral assets

---

[4] Plaintiff North Memorial Health Care asserted non-ERISA claims on behalf of itself and an ERISA claim on behalf of the North Memorial Health Care Pension Plan, an ERISA plan. Third Am. Compl. ¶ 224. Because of the commingled nature of North Memorial's participation in the securities lending program, the parties agreed to submit North Memorial's entire claim to the jury. *See* June 12, 2003 Pretrial Conference, Tr. 533:1-4 (Plaintiffs' counsel: "As [Wells Fargo's] counsel stated, there is one client North Memorial where there were commingled funds, and that is all going to go to the jury because they were commingled, it wasn't separated out.").

[5] To help illustrate certain concepts, Wells Fargo cites certain demonstrative exhibits in its proposed findings. Wells Fargo and Plaintiffs agree that such exhibits are admitted for demonstrative purposes only and are not part of the record.

and received $39,098.12 in sales proceeds. Stipulation ¶ 1. On or about February 22, 2015, Nebraska Methodist exited the program. *Id.* Nebraska Methodist's investment loss is $57,069.49, the amount it paid at exit to cover the shortfall in its cash collateral account. *Id.* ¶ 2.

11. At the time of trial, Meijer remained in the securities lending program and maintained possession of certain collateral assets. Tr. 622:20-24 (Julien). On or about January 9, 2015, Meijer sold all of its remaining collateral assets and received $2,460,622.82 in sales proceeds. Stipulation ¶ 3. On or about January 27, 2015, exited the program. *Id.* Meijer's investment loss is $2,728,864.04, the amount it paid at exit to cover the shortfall in its cash collateral account. *Id.* ¶ 4.

12. At the time of trial, Tuckpointers remained in the program and maintained possession of certain collateral assets. Tr. 6488:2-12 (Rivkin). On or about June 6, 2014, Tuckpointers sold all of its remaining collateral assets and received $540,941.56 in sales proceeds. Stipulation ¶ 5. On or about June 12, 2014, Tuckpointers exited the program. *Id.* Tuckpointers' investment loss is $704,294.30, the amount it paid at exit to cover the shortfall in its cash collateral account. *Id.* ¶ 6.

13. At the time of trial, TC-MNA remained in the securities lending program and maintained possession of certain collateral assets. Tr. 6550:10-12 (Slocum). On or about January 27, 2015, TC-MNA sold all of its remaining collateral assets and received $463,986.71 in sales proceeds. Stipulation ¶ 7. On or about January 27, 2015, TC-MNA exited the program. *Id.* TC-MNA's investment loss is $1,115,900.65, the amount it paid at exit to cover the shortfall in its cash collateral account. *Id.* ¶ 8.

    **C.**    **Investment Losses for those Plaintiffs that Maintained Possession of Certain Collateral Assets at Exit but Eventually Sold All Such Assets (TC-LPN)**

14. For TC-LPN, which exited the program and maintained possession of certain of its collateral assets, its investment loss is the amount paid at exit to cover the shortfall in its cash collateral account less (1) principal and interest payments TC-LPN received from its collateral assets, and (2) proceeds from any sale of those collateral assets. *See* Tr. 5609:25-5611:20 (McConnell); *id.* at 5613:24-5615:11.

15. TC-LPN exited the program in October 2010 and paid $23,159 to cover the shortfall in its cash collateral account. *Id*. at 6550:25-6551:10; TX34057A. After exiting the program, TC-LPN maintained possession of certain collateral assets. TX34057A. At the time of trial, TC-LPN had received $6,254 in principal and interest payments from its collateral assets. TX34057A.

16. Between the trial and January 9, 2015, TC-LPN received an additional $8,468.24 in principal and interest payments from its collateral assets. Stipulation ¶ 9. On or about January 9, 2015, TC-LPN sold all of its remaining collateral assets and received $5,493.61 in proceeds. *Id.* After these amounts are subtracted from the amount they paid to cover the shortfall in its cash collateral account, TC-LPN's investment loss is $2,943.15. *See* TX34057A; Stipulation ¶ 10.

    **D.**    **Investment Losses for those Plaintiffs that Continue to Maintain Possession of Certain Collateral Assets at Exit (International Truck)**

17. For International Truck, which exited the program and maintained possession of certain of its collateral assets, its investment loss is the amount paid at exit

9

to cover the shortfall in its cash collateral account less (1) principal and interest payments it received from those collateral assets as of July 31, 2017, (2) proceeds from any sale of those collateral assets, and (3) as reported by Comerica, the value of the collateral assets it continued to hold as of July 31, 2017. *See* Tr. 5609:25-5611:20 (McConnell); *id.* at 5613:24-5615:11; *id.* at 5638:23-5642:8.

18. In June 2011, International Truck exited the program, maintained possession of certain collateral assets, and paid $8,482,597 to cover the shortfall in its cash collateral account. TX34058A. At the time of trial, International Truck had received $1,502,525 in principal and interest payments from its collateral assets. TX34058A; Stipulation ¶ 12. Since trial, International Truck has received an additional $2,957,423.58 in principal and interest payments from its collateral assets. Stipulation ¶ 13.

19. International Truck continues to maintain possession of these collateral assets. *Id.* ¶ 11.

20. Comerica, International Truck's custodian, provides International Truck with account statements reporting, among other things, the estimated market value for each of the collateral assets International Truck continues to possess. *Id.* ¶ 15. As of July 31, 2017, Comerica estimated the total market value of International Truck's collateral assets to be $1,422,689.35. *Id.* ¶ 16.

21. After these amounts are subtracted from the amount they paid to cover the shortfall in its cash collateral account, International Truck's investment loss as of July 31, 2017 was $2,599,959.07. *See* TX34058A; Stipulation ¶¶ 11-16; Tr. 5609:25-5611:20 (McConnell); *id.* at 5613:24-5615:11.

### E. Post-Exit Performance of Plaintiffs' Collateral Assets

#### 1. Cheyne

22. Cheyne's senior notes were restructured into pass-through notes called "Gryphon." Gryphon notes have since paid principal and interest each month, which Wells Fargo then passes along to the Plaintiffs. TX37434 (provisionally received); Tr. 5139:17-5142:13 (Ahlstrand); *id*. at 5145:18-5146:4. As of March 31, 2013, the total recovery from the original Cheyne securities and the Gryphon notes was 59.2% of the original par value. TX37434; TX29541 (demonstrative); Tr. 5092:1-16 (Ahlstrand); *id*. at 5139:17-5142:13; *id*. at 5289:17-5290:5. The total recovery from the original Cheyne securities and the Gryphon notes has continued to increase as demonstrated by International Truck's receipt of more than $535,000 in principal and interest payments from its Gryphon notes since April 1, 2013. *See* Stipulation ¶ 13.

23. As of July 31, 2017, Comerica reported the estimated market value of International Truck's Gryphon notes to be $334,986.81. Stipulation ¶ 15.

#### 2. Victoria

24. The Victoria senior notes were later restructured into pass-through notes, which trade under "VFNC." VFNC notes have since paid principal and interest each month, which Wells Fargo then passes along to the Plaintiffs. TX37438 (provisionally received); Tr. 5143:2-5146:4 (Ahlstrand). For the original Victoria securities and the VFNC pass-through notes, the total recovery as of March 31, 2013 represented 64.2% of the original par value. TX37438; TX29541; Tr. 5143:2-5146:4 (Ahlstrand); *id*. at 5289:17-5290:5 (Glucksman). The total recovery from the original Victoria securities and the VFNC

11

pass-through notes has continued to increase as demonstrated by International Truck's receipt of more than $408,000 in principal and interest payments from its VFNC notes since April 1, 2013.  *See* Stipulation ¶ 13.

25. As of July 31, 2017, Comerica reported the estimated market value of International Truck's VFNC notes to be $195,106.57.  Stipulation ¶ 15.

### 3. Lehman

26. Since September 2008, Lehman's bankruptcy estate has been collecting and liquidating assets, the proceeds of which are distributed to its creditors.  Since April 2012, Wells Fargo has received semi-annual payments from the estate.  Tr. 5146:6-5146:15 (Ahlstrand).  Wells Fargo passes all of these payments along to the participants (including Plaintiffs) that hold the Lehman bonds.  Tr. 5146:16-22 (Ahlstrand); TX13835-1.  As of March 31, 2013, those payments totaled 14.5% of the original par value.  Tr. 5146:6-5149:18 (Ahlstrand).  The total recovery for these Lehman bonds has continued to increase as demonstrated by International Truck's receipt of more than $1 million in principal and interest payments from its Lehman bonds since April 1, 2013.  *See* Stipulation ¶ 13.

27. As of July 31, 2017, Comerica reported the estimated total market value of International Truck's Lehman bonds to be $201,424.05.  Stipulation ¶ 15.

### 4. Asset-Backed Securities

28. Many of the asset-backed securities purchased by Securities Lending have since matured at par, resulting in no investment losses.  Tr. 5151:14-5152:15 (Ahlstrand).  The remaining asset-backed securities are paying principal and interest every month, and those payments are passed on by Wells Fargo to the Plaintiffs and other participants who

hold those securities in its collateral accounts or separate accounts. *Id*. at 5152:16-5153:8 (Ahlstrand). As of March 31, 2013, the total recovery for the Galliard asset-backed securities represented 80.1% of the original par value for those securities. TX29543 (demonstrative); Tr. 5293:13-5294:18 (Glucksman). As demonstrated in International Truck's receipt of more than $956,000 in principal and interest payments from these securities since April 1, 2013, the total recovery for these securities has continued to increase. *See* Stipulation ¶ 13.

29. As of July 31, 2017, Comerica reported the estimated total market value of International Truck's asset-backed securities to be $691,171.92. *See* Stipulation ¶ 15.

### F. Securities Lending Fees

30. Wells Fargo voluntarily waived its securities lending fees beginning in the fall of 2007 through March 31, 2010. TX12589 at 3; TX36759 at 1; TX202 at 1 ("I talked with Dave Hoyt about the concept that I don't think we should collect our share of a split until the combination of the investor earnings and any price loss are certain to be positive."); Tr. 2514:9-19 (Smith); Tr. Ex. 33398 ("…until March 31, 2010, we will waive all securities lending fees.").

### G. Custody Fees

31. Wells Fargo's custody fees are unrelated to Wells Fargo's securities lending program or any securities lending services provided by Wells Fargo.

## II.     CONCLUSIONS OF LAW

32.     Under Minnesota law, the ERISA Plaintiffs are bound by the jury's determination that Wells Fargo did not breach its fiduciary duty to the Non-ERISA Plaintiffs.

33.     This Court raises and applies the doctrine of collateral estoppel *sua sponte* and finds that the ERISA Plaintiffs are bound by the non-ERISA jury's determination that Wells Fargo did not breach its fiduciary duties. *Sua sponte* application of the doctrine of collateral estoppel is necessary to preserve the integrity of the judicial process by ensuring that the judgment here is consistent with the jury's determination of factual issues common to both the non-ERISA and ERISA claims, thereby avoiding conflicting decisions on the same operative facts.

34.     Even if the ERISA Plaintiffs were not bound by the jury's verdict, the Court would still conclude that they did not meet their burden of proving a breach of fiduciary duty.

35.     Plaintiffs are not entitled to any remedy at law.

36.     Plaintiffs are not entitled to any equitable or remedial relief, including any relief under 29 U.S.C. §1109(a).

37.     Plaintiffs are not entitled to fee forfeiture of any of Wells Fargo's securities lending fees.

38.     Plaintiffs are not entitled to fee forfeiture of any of Wells Fargo's custody fees.

### III.  CONCLUSION

39.  For the foregoing reasons, the Court concludes that Plaintiffs failed to prove that Wells Fargo breached its fiduciary duties under ERISA and are therefore not entitled to any remedy.

Dated:  October 18, 2017

**ZELLE LLP**

 s/Dan Millea
Dan Millea (MN State Bar #245963)
Rory D. Zamansky (MN State Bar #0330620)
Lindsey A. Davis (MN State Bar #0332148)
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
dmillea@zelle.com
rzamansky@zelle.com
ldavis@zelle.com
Phone: (612) 339-2020

-and-

**PROSKAUER ROSE LLP**
Bart H. Williams (admitted *pro hac vice*)
Manuel F. Cachán (admitted *pro hac vice*)
2049 Century Park East
Los Angeles, CA 90067-3206
BWilliams@proskauer.com
MCachan@ proskauer.com
Phone: (310) 557-2900

**ATTORNEYS FOR WELLS FARGO BANK, N.A.**