# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Blue Cross and Blue Shield of Minnesota, et al., <br><br> Plaintiffs, <br> vs. <br><br> Wells Fargo Bank, N.A., <br><br> Defendant. | Civil No. 11-2529 (DWF/KMM) |

### ERISA PLAINTIFFS' MEMORANDUM OF LAW REGARDING APPROPRIATE REMEDIES FOR WELLS FARGO'S BREACHES OF ITS FIDUCIARY DUTIES

# INTRODUCTION

Wells Fargo's actions towards the ERISA Plaintiffs were egregious. The bank's actions, omissions, and concealments in operating the Securities Lending Program ("SLP") constituted multiple and serious breaches of its fiduciary duties to the ERISA Plaintiffs. *See generally* Dkt. 699. As a result, the ERISA Plaintiffs sustained significant out-of-pocket losses—millions of dollars collectively, due to the bank's multiple breaches of its ERISA fiduciary duties. And Wells Fargo substantially profited from the SLP and from its breaches, earning more than $10 million in fees from just these six ERISA Plaintiffs during the years that they were in the SLP. Justice for the ERISA Plaintiffs has been long in coming, but their day is here.

> ERISA's liability section for breaches of fiduciary duty provides that:
>
> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be **personally liable to make good to such plan any losses to the plan** resulting from each such breach, and **to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary**, and shall be subject to **such other equitable or remedial relief as the court may deem appropriate**, including removal of such fiduciary.

29 U.S.C. §1109(a) (emphasis added). Under 29 U.S.C. §1109(a), the goal of fashioning the appropriate equitable remedies is to restore the ERISA Plaintiffs "to the position in which they would have occupied but for the breach of trust." *Martin*

*v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992) (quotation omitted). In other words, ERISA grants the Court "the power to shape an award so as to make the injured plan whole." *Neil v. Zell*, 767 F. Supp. 2d 933, 940 (N.D. Ill. 2011) (emphasis added, quotation omitted).

ERISA provides the Court with "broad and flexible equitable remedies in cases involving breaches of fiduciary duty." *Dasler v. E.F. Hutton & Co.*, 694 F. Supp. 624, 633 (D. Minn. 1998) (emphasis added, quotation omitted). "The measure and amount of the plans' losses" are questions "for the district court to resolve." *Tussey v. ABB, Inc.*, 850 F.3d 951, 906 (8th Cir. 2017). It is this Court's "function to fashion the remedy best suited to the harm." *Id*. (quoting *Martin*, 965 F.2d at 671-72) (internal quotation marks omitted).

In light of 29 U.S.C. §1109(a) and the relevant case law on appropriate remedies for ERISA breach of fiduciary duty claims, the Court concludes that Wells Fargo must make each ERISA Plaintiff whole by reimbursing each of the ERISA Plaintiffs for the amount of out-of-pocket losses they sustained from the Securities Lending Program ("SLP").

In addition, because it would be inequitable for Wells Fargo to be allowed to profit from the ERISA Plaintiffs' participation in the SLP when it breached its fiduciary duties to all of the ERISA Plaintiffs in numerous ways through its operation of the Securities Lending Program, the Court concludes that it will also

order disgorgement of the SLP and custody fees earned by Wells Fargo from each of the ERISA Plaintiffs, in the amounts outlined below.

I.  **The ERISA statute requires Wells Fargo to reimburse each ERISA Plaintiff for its out-of-pocket losses from the Securities Lending Program.**

As the evidence at trial established, Wells Fargo breached its fiduciary duties to the ERISA Plaintiffs in the Securities Lending Program. Wells Fargo invested in extraordinarily risky investments, despite representations to the contrary; intentionally concealed these improper investments and their deteriorating value and liquidity; and bestowed favored treatment upon preferred clients, including Wells Fargo entities that participated in the SLP. Wells Fargo held the ERISA Plaintiffs hostage in the SLP, and only let them out once each Plaintiff paid Wells Fargo's exit demands in cash, shifting the entire financial impact from Wells Fargo's multiple breaches from itself to the ERISA Plaintiffs. The ERISA Plaintiffs each sustained losses in the amount of this exit payment that Wells Fargo required before the bank would return their loaned securities to them and allow them to leave the SLP. *See generally* Dkt. 707. (Stipulation dated 10/18/17).

Requiring Wells Fargo to reimburse the ERISA Plaintiffs for these out-of-pocket loss amounts is necessary to restore the ERISA Plaintiffs to the position they would have occupied but for Wells Fargo's breaches of its fiduciary duties. It is also a mandatory remedy under the plain language of the ERISA statute once a

breach and causation is proven, as the statute states that a fiduciary "*shall* be personally liable *to make good* to such plan *any losses* to the plan resulting from each such breach" of its duties. 29 U.S.C. §1109(a) (emphases added).

There is no question that the ERISA Plaintiffs' out-of-pocket losses resulted from the bank's multiple breaches. *See* Dkt. 699 at 67-70. If Wells Fargo had actually met its fiduciary obligations in any number of ways (e.g., investing only in collateral assets that were truly "money-market-like" investments as it represented to Plaintiffs that it would, or monitoring the collateral assets against the investment guidelines to ensure compliance with the guidelines, or divesting its improper holdings in the early days of the credit crisis), then the Plaintiffs would never have sustained these out-of-pocket losses.

A comparison of the SLP collateral assets with Wells Fargo's money market funds, which sustained no losses during the credit crisis, provides conclusive evidence that the bank's breaches caused Plaintiffs' losses. Dkt. 699 at ¶ 215 (summarizing Prof. Geczy's testimony about the stability of Wells Fargo's money market funds during the same time period wherein the SLP experienced substantial losses). *See also* Dkt. 699 at 67-70.

Wells Fargo's decision to "blow up" the trust, foist the collateral assets onto the ERISA Plaintiffs, and demand an exit payment and hold each ERISA Plaintiff hostage in the SLP by requiring that each pay the bank substantial cash exit

payments before the bank would return the Plaintiffs' own loaned securities and let them out of the SLP guaranteed that the ERISA Plaintiffs would sustain substantial losses from the SLP. Wells Fargo's exit "strategy" was a final, fatal breach of its duties. Any suggestion from Wells Fargo that someone or something other than the bank's own flagrant and repeated violations of its fiduciary duties caused Plaintiffs' losses is wrong.

International Truck is the only ERISA Plaintiff that still holds any collateral assets from the SLP. Wells Fargo contends that International Truck's loss amount should be reduced by what Wells Fargo asserts is the value of the collateral still held by International Truck. TX29573; TR6664-65; *see also* TR5613-18. At trial, the valuation amounts that Wells Fargo contended should be used were those that its expert, John McConnell, placed upon them. *Id.* These amounts are based on "indicative prices." TR5638-40; TR5652-53. "Indicative prices" are estimates of what the collateral may sell for. TR5639-40. They are not actual prices that the collateral sold for; they are "proxy" prices determined by looking at the sales of other securities that have traded. TR5652-53; TR5616-17.

There is insufficient evidence in the record to conclude that the present-day "market value" reported by Comerica on International Truck's collateral account statements is an accurate market value. *See* Dkt. 707 at ¶¶ 15-16. Wells Fargo has laid no foundation regarding the methodology beyond these supposed "market

values," and International Truck objects that such information is hearsay within hearsay, as Comerica relies upon third-party pricing services to provide market values.

Nor is there any information in the record on how the amount that Wells Fargo actually collected when it conducted bulk sales of collateral assets for other SLP participants, including the other ERISA Plaintiffs, corresponds to the purported "market value" of International Truck's collateral assets promoted by Wells Fargo.

Because the "market value" amounts propounded by Wells Fargo are speculative and are not based on actual sales of the actual collateral, International Truck's reimbursement for its loss amount should not be reduced by the amounts that Mr. McConnell has calculated nor the amounts stated on the Comerica statements, as summarized in the parties' stipulation.

In addition, International Truck testified at trial that it does not wish to retain the collateral and will return it to Wells Fargo if it is "made whole" for all of its securities lending losses and associated costs. TR6652-53 (International Truck). The Court declines to attribute any market value to International Truck's collateral

7

assets, which it never wished to take onto its balance sheets but which were foisted upon it by Wells Fargo upon exit from the SLP.[1]

In assessing losses under ERISA, the precise measure "need not be exact – 'it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Martin*, 965 F.2d at 672 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). "Doubts resulting from difficulty in determining damages as a result of a fiduciary's breach should be resolved in favor of the plan." *Dasler*, 694 F. Supp. at 634. In this case, however, there simply are no doubts about the financial impact of the bank's breached duties. Each ERISA Plaintiff sustained meaningful out-of-pocket losses from the SLP, and the parties have stipulated to the amounts. *See generally* Dkt. 707. Wells Fargo's breaches caused the ERISA Plaintiffs more than $9 million in out-of-pocket losses. *See* Dkt. 711, ERISA Plaintiffs Findings of Fact and Conclusions of Law on Remedies at ¶16. Once the Court concludes that Wells Fargo breached its duties and that these losses to the

---

[1] If the Court determines that it must act in some way upon the "market value" of the collateral assets that Wells Fargo promotes, the most equitable use of it would be to require Wells Fargo to purchase the collateral assets from International Truck for the valuation amount, consistent with the testimony at trial from International Truck that it did not want the collateral assets foisted upon it when Wells Fargo disaggregated the trust.

ERISA Plaintiffs' plans were caused by the breaches, then as required by 29 U.S.C. §1109(a), Wells Fargo *shall* reimburse the ERISA Plaintiffs these amounts.

II.   **The Court should disgorge the SLP revenues Wells Fargo earned as well as the custody fees each ERISA Plaintiff paid to Wells Fargo while participating in the SLP.**

Requiring Wells Fargo to repay the ERISA Plaintiffs their out-of-pocket losses is a necessary but insufficient remedy. A decision from this Court only requiring Wells Fargo to reimburse each ERISA Plaintiff before sending the parties on their way would allow the bank to have been enriched by more than $10 million in fees paid by the ERISA Plaintiffs to Wells Fargo during the time period in which Wells Fargo repeatedly breached its duties. The ERISA Plaintiffs agreed to pay Wells Fargo SLP and custody fees, believing that the bank would act as their fiduciary and serve their interests first. Wells Fargo instead breached its duties again and again, and as a result, the bank has forfeited its rights to profit from the ERISA Plaintiffs during this time period.

The disgorgement of ill-gotten profits is also mandatory. In addition to making the plans whole for any losses, ERISA fiduciaries *shall* also "be liable to … restore to [the] plan *any profits* … which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. §1109(a) (emphases added); *see also Martin*, 965 F.2d at 671 ("[A]n ERISA fiduciary who breaches any duty is liable to the plan … for 'any profits … made through use of assets of the plan by the fiduciary'….").

The fees subject to forfeiture in this case are the securities lending program ("SLP") fees paid to Wells Fargo by each ERISA Plaintiff as well as the custody fees paid to Wells Fargo by each ERISA Plaintiff during its period of SLP participation.

The profits that Wells Fargo made from each ERISA Plaintiff's participation in the SLP were "made through use of assets of the plan by the fiduciary," 29 U.S.C. §1109(a), and flowed from the bank's breached duties. Pursuant to the Securities Lending Agreements, the SLP fees constituted a portion of the earnings from the collateral assets—the purchase of which forms a basis for Plaintiffs' claim of breach of fiduciary duty. Despite representing to the ERISA Plaintiffs that the SLP was not stretching for yield, TR1456-57, that is exactly what the bank did, purchasing increasingly risky (and therefore, prior to the credit crisis, increasingly profitable for the bank) collateral assets in violation of the SLP investment guidelines and its numerous fiduciary duties.

Disgorgement of profits made by an ERISA fiduciary is therefore a necessary remedy under §1109(a), and considering the facts relating to Wells Fargo's multiple breaches, disgorgement is warranted here. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008-09 (8th Cir. 2004) ("Thus, [defendant] can be forced under [ERISA's equitable remedies provision] to disgorge any profits it earned as a result of that conduct."); *Dasler,* 694 F. Supp. at 634. "[T]he purpose of this award is to prevent [the defendant] from profiting by its breach of fiduciary

duty[.]" *Parke*, 694 F. Supp. at 1009. "[O]nce the ERISA plaintiff has proved a breach of fiduciary duty and a prima facie case of ... ill-gotten profit to the fiduciary, the burden of persuasion shifts to the fiduciary to prove that ... his profit was not attributable to the breach of duty." *Felber v. Estate of Regan*, 117 F.3d 1084, 1087-88 (8th Cir. 1997) (quoting *Martin*, 965 F.2d at 671). The Court should disgorge all of the SLP fees paid to Wells Fargo by the ERISA Plaintiffs during this time period. Dkt. 707 at ¶¶ 18-23; Dkt. 711, ERISA Plaintiffs Findings of Fact and Conclusions of Law on Remedies at ¶27.

Wells Fargo also charged each ERISA Plaintiff custody fees. TR242-43; TR1416-17. The custodial relationship was part-and-parcel of the SLP relationship. *Id.*; TR2273-74. The ERISA Plaintiffs were Wells Fargo's custodial customers, and Wells Fargo marketed the SLP to them as a service for its custodial clients to earn additional income to offset its custody fees. TR1428; TR1437. The Custody Agreement that Wells Fargo signed with each Plaintiff, by itself, also imposed a fiduciary duty. TR230; TR1416-17. As such, it is also equitable to refuse to allow Wells Fargo to profit from the custody fees they collected from the ERISA Plaintiffs while each was in the SLP. Given that Wells Fargo expressly marketed the SLP to the ERISA Plaintiffs as a means to offset the custody fees they paid to Wells Fargo, disgorgement of custodial fees from all ERISA Plaintiffs' custodial accounts at Wells Fargo, not just those particular accounts from which securities were lent in

the program, is appropriate. The Court should disgorge all of the custody fees paid to Wells Fargo by the ERISA Plaintiffs during this time period. Dkt. 707 at ¶¶ 24-30; Dkt. 711, ERISA Plaintiffs' Findings of Facts and Conclusions of Law on Remedies at ¶30.

## CONCLUSION

Wells Fargo's multiple breaches of its fiduciary duties to the ERISA Plaintiffs resulted in substantial losses to Plaintiffs and substantial ill-gotten profits to Wells Fargo. The Court should order the equitable remedies proposed in the ERISA Plaintiffs' Findings of Facts and Conclusions of Law Regarding Appropriate Remedies for Wells Fargo's Breaches of Its Fiduciary Duties filed simultaneously with this brief and enter judgement in favor of each ERISA Plaintiff in the amount outlined therein. *See* Dkt. 711, ERISA Plaintiffs' Findings of Facts and Conclusions of Law on Remedies at ¶¶ 32-37. After the ERISA Plaintiffs submit their post-judgment motion for prejudgment interest, attorney fees, and costs, all of which can also be awarded as remedies for breaches of ERISA fiduciary duties, the judgments should be amended to include those remedies as well.

| | |
|---|---|
| Dated: October 18, 2017 | Respectfully submitted, |
| | ROBINS KAPLAN LLP |
| | By: */s/ Katherine S. Barrett Wiik* |
| | Munir R. Meghjee (#301437)<br>Katherine S. Barrett Wiik (#351155) |
| | 2800 LaSalle Plaza<br>800 LaSalle Avenue<br>Minneapolis, MN 55402-2015<br>mmeghjee@robinskaplan.com<br>kbarrettwiik@robinskaplan.com<br>612-349-8500 |
| | **ATTORNEYS FOR ERISA PLAINTIFFS** |

88394749.1