**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Blue Cross and Blue Shield of Minnesota, as Administrator of the Blue Cross and Blue Shield of Minnesota Pension Equity Plan; CentraCare Health System, on Behalf of Itself and the Sisters of the Order of Saint Benedict Retirement Plan; Supplemental Benefit Committee of the International Truck and Engine Corp. Retiree Supplemental Benefit Trust, as Administrator of the International Truck and Engine Corp Retiree Supplemental Benefit Trust; Jerome Foundation; Meijer, Inc., as Administrator of the Meijer OMP Pension Plan and Meijer Hourly Pension Plan, Participants in the Meijer Master Pension Trust; Nebraska Methodist Health System, Inc., on Behalf of Itself, and as Administrator of the Nebraska Methodist Hospital Foundation, the Nebraska Methodist Health System Retirement Account Plan, and the Jennie Edmundson Memorial Hospital Employee Retirement Plan; North Memorial Health Care, on Behalf of Itself and as Administrator of the North Memorial Health Care Pension Plan; The Order of Saint Benedict, as the St. John's University Endowment and the St. John's Abbey Endowment; The Twin City Hospitals-Minnesota Nurses Association Pension Plan Committee, as Administrator of the Twin City Hospitals-Minnesota Nurses Association Pension Plan; Administrative Committee of the Joint Hospitals Pension Board, as Administrator of the Twin City Hospitals Pension Plan for Licensed Practical Nurses; The Board of Trustees of the Tuckpointers Local 52 Pension Trust Fund, as administrator of the Tuckpointers Local 52 Pension Trust Fund, and the Board of Trustees of the Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52, as administrator for the Chicago Area Joint Welfare Committee for the Pointing, Cleaning and Caulking Industry Local 52; The El Paso County Retirement Plan,<br><br>        Plaintiffs,<br>v.<br>Wells Fargo Bank, N.A.,<br><br>        Defendant. | Case No: 11-cv-2529 DWF/KMM<br><br><br><br><br><br><br><br><br><br>**WELLS FARGO BANK, N.A.'S RESPONSE BRIEF ON THE RECOVERABILITY AND APPROPRIATE MEASURE OF DAMAGES** |

If the Court were to determine that Wells Fargo breached a fiduciary duty under ERISA and that Plaintiffs are entitled to relief under 29 U.S.C. § 1109(a), Plaintiffs would still not be entitled to a forfeiture of Wells Fargo's Institutional Retirement and Trust custody fees *or* securities lending fees, because neither category of fees is derived from or related to the alleged wrongdoing that is the subject matter of this case.  Any relief ordered under 29 U.S.C. § 1109(a) must be limited to the amount Plaintiffs paid at exit to cover their shortfall in their cash collateral account *less* (1) principal and interest payments Plaintiffs received from their collateral assets, (2) proceeds from any sale of those collateral assets, *and* (3) in the case of International Truck and Engine Supplemental Benefit Plan, the value of the collateral assets International Truck continued to hold as of July 31, 2017.

## I.   PLAINTIFFS ARE NOT ENTITLED TO FEE FORFEITURE.

Plaintiffs improperly seek "more than $10 million in fees" that the six ERISA Plaintiffs paid to Wells Fargo "during the years" Plaintiffs participated in Wells Fargo's Securities Lending Program. Dkt. 717 ("Pls. Br.") at 1. The vast majority of the "$10 million in fees," however, was not paid in exchange for securities lending services and are fees for services *entirely separate and distinct* from Plaintiffs' participation in Wells Fargo's Securities Lending Program. Specifically, Plaintiffs seek to disgorge two types of fees: (1) **$9,136,284.70 in Institutional Retirement and Trust custody fees**, which were charged to Plaintiffs for custodial services for Plaintiffs' custody accounts at Wells Fargo provided by Wells Fargo's Institutional Retirement and Trust Group; and (2) **$1,732,907.74 in securities lending fees**, which represent Wells Fargo's share of earnings from Plaintiffs' participation in Wells Fargo's Securities Lending Program.

1

Plaintiffs assert that Wells Fargo completely "forfeited its rights to profit from Plaintiffs during this time period." *Id.* at 9. That is flat-out wrong. The law does not permit the complete disgorgement of fees that Plaintiffs seek. Rather, the law permits only the disgorgement of *ill-gotten* gains; *i.e.,* only those profits *derived from* wrongdoing. *Felber v. Estate of Regan,* 117 F.3d 1084, 1087 (8th Cir. 1997) ("[S]ection 1109 only allows recovery [for the plan] where there is a causal connection between the use of the plan's assets and the profits made by fiduciaries . . . ."). The remedy of forfeiture is not available to disgorge profits the fiduciary would have earned absent the breach. *Wsol v. Fiduciary Mgmt. Assocs., Inc.,* 266 F.3d 654, 658 (7th Cir. 2001).

Here, Plaintiffs have not and cannot establish that the Institutional Retirement and Trust custody fees are ill-gotten gains *derived from Wells Fargo's alleged* wrongdoing:

- Institutional Retirement and Trust custody fees are generated by Wells Fargo's Institutional Retirement and Trust Group, which is an entirely separate business unit from the Securities Lending Department;

- Plaintiffs would have incurred Institutional Retirement and Trust custody fees for custodial services provided by the Institutional Retirement and Trust Group—regardless of whether Plaintiffs participated in securities lending—and thus Wells Fargo would have earned these fees even if there had been no alleged breach of fiduciary duty;

- There is no allegation whatsoever of wrongdoing or alleged breach of duty by the Wells Fargo Institutional Retirement and Trust Group; and

- Plaintiffs' request for total forfeiture of Institutional Retirement and Trust custody fees includes custody fees for Plaintiffs' Institutional Retirement and Trust custody accounts that never participated in securities lending and on securities that were never on loan through the Securities Lending Program.

Similarly, Plaintiffs have not and cannot establish they are entitled to a total disgorgement of Wells Fargo's securities lending fees because:

2

- Wells Fargo's securities lending fees from the periods pre-dating and post-dating the alleged misconduct were earned during periods where no wrongdoing has been alleged and are, by their very nature, not derived from wrongdoing; and

- Wells Fargo waived its share of securities lending earnings during the period of alleged misconduct, and, therefore, there are no profits to disgorge.

As such, Plaintiffs' requested remedy of total forfeiture of all of Wells Fargo's Institutional Retirement and Trust custody fees and Wells Fargo's Securities Lending fees is improper and must fail.

### A. Institutional Retirement and Trust Custody Fees Are Not Subject to Disgorgement.

The Institutional Retirement and Trust custody fees charged to Plaintiffs by Wells Fargo do not relate in any way to Wells Fargo's Securities Lending Program.  Rather, the Institutional Retirement and Trust custody fees were paid to Wells Fargo for custodial services provided by Wells Fargo's Institutional Retirement and Trust Group, a business unit separate from the Securities Lending Department.  Declaration of Chad O. Breunig ¶ 4 (Dkt. 723) ("Breunig Decl.").

Plaintiffs' Institutional Retirement and Trust custody fees were generated from activity in Plaintiffs' own custodial accounts at Wells Fargo, not activity from the Securities Lending Department. Undeniably, these custody fees would have been charged to Plaintiffs even if Plaintiffs did not participate in the Securities Lending Program. *Id.* ¶ 10. Without any legal basis, Plaintiffs seek a total forfeiture of all Institutional Retirement and Trust custody fees, regardless of whether those custody fees were generated from custody accounts that were ever in securities lending.   Declaration of Laurissa Ahlstrand ¶ 14 (Dkt. 710) ("Ahlstrand Decl."). The Institutional Retirement and Trust custody fees

3

are, therefore, not derived from any alleged breach of duty under the Securities Lending Program and thus are not subject to forfeiture.

Plaintiffs attempt to manufacture an argument that the Institutional Retirement and Trust custody fees should be forfeited because Wells Fargo "marketed the SLP to the ERISA Plaintiffs as a means to offset the custody fees paid to Wells Fargo." Pls. Br. at 11. This completely misses the point. The Plaintiffs would have been paying the Institutional Retirement and Trust custodial fees regardless of their participation in securities lending. Breunig Decl. ¶ 10. The cited transcript pages supports Wells Fargo's position as the testimony makes clear that Plaintiffs were incurring "custodial fees that they were otherwise paying the bank to have custody of their securities…" Tr. at 1428.

The case law cited by Plaintiffs also demonstrates why the Institutional Retirement and Trust custody fees are not subject to forfeiture here. Plaintiffs quote an Eighth Circuit Court of Appeals case, *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992), for the proposition that the goal of the equitable remedies under ERISA is to restore Plaintiffs "to the position . . . *they would have occupied but for the breach of trust*." Pls. Br. at 2 (emphasis added). Yet *Martin* undercuts Plaintiffs' position, rather than supporting it. Awarding the Plaintiffs their custody fees would deliver a huge windfall to Plaintiffs because they would be in a *far better position* than they would have been had the alleged breaches in the securities lending program not occurred. The reality is that Plaintiffs would have incurred their Institutional Retirement and Trust custody fees regardless of whether they participated in securities lending. Breunig Decl. ¶ 10.

4

Furthermore, Plaintiffs do not allege any breach of a Custody Agreement or allege any wrongdoing by Wells Fargo's Institutional Retirement and Trust Group. *See generally* Pls. Br. 1-13; Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Dkt. 699); Instead, Plaintiffs repeatedly acknowledge Wells Fargo's alleged breaches relate solely to the Wells Fargo's Securities Lending Program:

- "The bank's actions, omissions, and concealments *in operating the Securities Lending Program* . . . constituted multiple and serious breaches of fiduciary duties";

- Plaintiffs seek the "amount of out-of-pocket losses they *sustained from the Securities Lending Program*";

- Wells Fargo "breached its fiduciary duties to all of the ERISA Plaintiffs in numerous ways *through its operation of the Securities Lending Program*."

Pls. Br. at 2-3. (emphasis added). Plaintiffs absurdly demand disgorgement of Institutional Retirement and Trust custody fees when there is no allegation whatsoever of any breach or wrongdoing by the Institutional Retirement and Trust Group.

Simply put, awarding Plaintiffs the forfeiture of custody fees would result in giving Plaintiffs a $9.1+ million gift of free custodial services which had been properly provided by Wells Fargo's Institutional Retirement and Trust Group. Under *Martin*, Plaintiffs are not entitled to fee forfeiture of Institutional Retirement and Trust custody fees because it would not serve to restore Plaintiffs to their pre-breach position.  To the contrary, it would grant Plaintiffs a huge windfall.

### B.  Plaintiffs cannot disgorge Securities Lending Fees.

Plaintiffs make no attempt to limit the time period for disgorgement of Wells Fargo's securities lending fees.  Instead, they seek the complete disgorgement of securities

lending fees "during the years that they were in the SLP" which includes: (1) the period *before* the alleged breaches; (2) during the period of alleged misconduct; and (3) the period *after* the alleged misconduct.  Pls. Br. at 2, 9.

Plaintiffs cannot disgorge securities lending fees that pre- or post-date the alleged breaches.  Wells Fargo properly earned securities lending revenue *before* and *after* the period of alleged wrongdoing.  As such, these pre- and post-breach fees—by definition— are *not derived* from any alleged misconduct and therefore are not subject to forfeiture.

Plaintiffs also cannot disgorge securities lending fees incurred during the period of alleged misconduct because Wells Fargo voluntarily waived its earnings from its Securities Lending Program between October 2007 and March 2010—the time of the alleged breaches. Since Wells Fargo was operating the program at a loss during that time and did not generate any profits, there is nothing for Wells Fargo to forfeit.

## II.     INTERNATIONAL TRUCK'S INVESTMENT LOSSES, IF AWARDED, MUST BE REDUCED BY THE VALUE OF ITS COLLATERAL ASSETS.[1]

International Truck's collateral assets "clearly have value." Tr. 5649:23-5650 (McConnell).  Wells Fargo's expert testified that "it is inappropriate to put a zero value on the collateral securities," *id.* at 5649:23-5650:09, and his testimony relied on Plaintiffs' regular receipt of principal and interest payments from their collateral assets and Wells

---

[1] While Wells Fargo maintains that Plaintiffs are not entitled to any remedy because Wells Fargo did not breach any fiduciary duty under ERISA, the parties agree on the *calculation* of each Plaintiff's investment losses except for International Truck.  Each of the other Plaintiffs sold its collateral assets which renders the parties' dispute regarding how to value Plaintiffs' collateral assets irrelevant.

Fargo's sale of these same collateral assets before and during trial (at or near the estimated prices obtained by Wells Fargo from third-party pricing services).[2]  Using then-current estimated pricing information obtained by third-party pricing services, including Bloomberg, as well as Wells Fargo's estimated pricing, Wells Fargo reduced Plaintiffs' investment losses by the value of the collateral assets still held by Plaintiffs.  TX29573; Tr. 5609:25-5611:20 (McConnell); *id.* at 5613:24-5618:4; *id.* at 5638:23-5642:8.

Plaintiffs' post-trial receipt of more than $9 million in principal and interest payments and sales proceeds from these same collateral assets[3] confirms that Wells Fargo and its expert were correct – International Truck's collateral assets "clearly have value." Plaintiffs' refusal to recognize the value of International Truck's collateral assets is contradicted by International Truck's continued receipt of principal and interest payments from those same assets. Since trial, International Truck has received more than $535,000 in principal and interest payments from its Gryphon notes, more than $408,000 in principal and interest payments from its VFNC notes, more than $1 million in principal and interest payments from its Lehman bonds, and more than $956,000 in principal and interest payments from its asset-backed securities. *See* Stipulation ¶ 13.  Plaintiffs do not even attempt to argue that International Truck will stop receiving these principal and interest payments while it continues to maintain possession of the assets.

---

[2] Tr. 5181:18-5183:12 (Ahlstrand); *id.* at 3622:1-8 (Hogan); TX34060B; TX34061C; and TX34062B.

[3] *Compare* TX34052B and TX34059B *with* Dkt. No. 707 ("Stipulation") ¶¶ 1-17.

Plaintiffs' refusal to recognize the value of International Truck's collateral assets is further contradicted by Wells Fargo's post-trial sales of those same assets for the other Plaintiffs *near or above* the market price estimated by third-party pricing services. Contrary to Plaintiffs' assertion, there is evidence of the actual prices that the at-issue collateral assets sold for. Between June 12, 2014 and January 9, 2015, Nebraska Methodist, Meijer, Tuckpointers, and TC-MNA each sold their Gryphon notes at sale prices between 102.5% and 104% of the then-estimated market price obtained by Wells Fargo from Citigroup. Ahlstrand Decl. ¶ 8 and Exhibits 1-4. During that same time period, certain Plaintiffs each sold their VFNC notes at sale prices between 99% and 109% of the then-estimated market price obtained by Wells Fargo from Citigroup. Ahlstrand Decl. ¶ 9 and Exhibits 2-4. Nebraska Methodist, Meijer, Tuckpointers, and TC-MNA also each sold their Lehman notes at sale prices between 98.6% and 102.9% of the then-estimated market price obtained by Wells Fargo from Interactive Data Corporation ("IDC"). Ahlstrand Decl. ¶ 10 and Exhibits 1-4. These same Plaintiffs each sold their asset-backed securities also currently held by International Truck between 89.9% and 104.8% of the then-estimated market prices obtained by Wells Fargo from IDC and Wachovia Capital Markets. Ahlstrand Decl. ¶ 11 and Exhibits 1-4.

Finally, Comerica, International Truck's custodian, provides International Truck with the current estimated market value of its collateral assets. Stipulation ¶ 15. Any award of investment losses to International Truck should be reduced by the $1,422,689.35 current market value of its collateral assets as reported by Comerica. *Id.* ¶¶ 15-16. Failing to

reduce International Truck's investment losses by the value of those assets would undoubtedly result in an improper windfall to International Truck.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs are not entitled to any relief.

Dated:  November 1, 2017

**ZELLE LLP**

s/Dan Millea
Dan Millea (MN State Bar #245963)
Rory D. Zamansky (MN State Bar #0330620)
Lindsey A. Davis (MN State Bar #245963)
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
dmillea@zelle.com
rzamansky@zelle.com
ldavis@zelle.com
Phone: (612) 339-2020

-and-

**PROSKAUER ROSE LLP**
Bart H. Williams (admitted *pro hac vice*)
Manuel F. Cachán (admitted *pro hac vice*)
2049 Century Park East
Los Angeles, CA 90067-3206
BWilliams@proskauer.com
MCachan@ proskauer.com
Phone: (310) 557-2900

**ATTORNEYS FOR WELLS FARGO BANK, N.A.**

---

[4] If the Court determines that Wells Fargo breached a fiduciary duty under ERISA and further determines that International Truck's investment losses should not be reduced by the value of its collateral assets, Wells Fargo respectfully requests that International Truck be ordered to return its collateral assets to Wells Fargo. *See* Pls. Br. at 7 ("International Truck testified at trial that it does not wish to retain the collateral and will return it to Wells Fargo if it is 'made whole' . . . .").